# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SALVATORE BADALAMENTI, on behalf of himself and the Putative Class,

        Plaintiff,

  v.

RESIDEO TECHNOLOGIES, INC., and HONEYWELL INTERNATIONAL INC.,

        Defendants.

Case No. 2:22-cv-5592-CCC-CLW

Hon. Claire C. Cecchi
Magistrate Judge Cathy L. Waldor

**Oral Argument Requested**

---

## MEMORANDUM OF LAW OF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

James B. Saylor (*pro hac vice*)
Aaron J. Gold
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800
Fax: (212) 808-7897
jsaylor@kellydrye.com
agold@kellydrye.com

Lauri A. Mazzuchetti
KELLEY DRYE & WARREN LLP
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Tel: (973) 503-5900
Fax: (973) 503-5950
lmazzuchetti@kelleydrye.com

*Counsel for Defendants*
*Resideo Technologies, Inc., and*
*Honeywell International Inc.*

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ....................................................1

II.  RELEVANT FACTS AND PROCEDURAL HISTORY.............................4

    **A.**   Defendants and the Vista-20P ...........................................4

    **B.**   Plaintiff Concedes that UL Tested and Certified the Vista-20P as Compliant with Applicable Standards .................................4

    **C.**   The Complaint Does Not Allege Any Misrepresentation of the Vista-20P's Compliance with Applicable Safety Standards...............6

    **D.**   The Complaint is Based On Zwirn's Disagreements with UL, Not Any Fraud, Misrepresentation, or Breach of Warranty by Defendants.........................................................8

    **E.**   Plaintiff's Claims................................................10

III.  LEGAL STANDARD ........................................................11

IV.  ARGUMENT................................................................12

    **A.**   All of Plaintiff's Claims Fail Because it is Undisputed that the Alarm Systems Were Tested and Listed by UL.................................12

    **B.**   Plaintiff Fails to Plead Injury .......................................16

    **C.**   Plaintiff's Claims Are Time-Barred...................................19

    **D.**   Plaintiff's Claims Fail for Additional, Independent Defects ............22

        **1.**   Plaintiff's Fraud-Based Claims Are Not Pled with Particularity and are Otherwise Flawed..................................22

        **2.**   The Economic Loss Doctrine Bars Plaintiff's Tort Claims.....28

        **3.**   Plaintiff's Warranty Claims Fail..............................30

        **4.**   Plaintiff Does Not State a Claim for Unjust Enrichment ........36

        **5.**   Plaintiff Does Not State a Claim Under the Truth-in-Consumer Contract, Warranty, and Notice Act......................37

V.   CONCLUSION............................................................40

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adamson v. Ortho-McNeil Pharm., Inc.*,
   463 F. Supp. 2d 496 (D.N.J. 2006) ..................................................................37

*AgroLabs, Inc. v. Innovative Molding, Inc.*,
   2014 WL 3535560 (D.N.J. July 16, 2014) .......................................................29

*Alloway v. General Marine Indus., L.P.*,
   695 A.2d 264 (N.J. 1997) ..................................................................................29

*Argabright v. Rheem Mfg. Co.*,
   201 F. Supp. 3d 578 (D.N.J. 2016) ...................................................................27

*Arlandson v. Hartz Mt. Corp.*,
   792 F. Supp. 2d 691 (D.N.J. 2011) .............................................................36, 37

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..........................................................................................11

*Atl. Health Sys., Inc. v. Cummins Inc.*,
   2010 WL 5252018 (D.N.J. Dec. 17, 2010) .......................................................19

*Avram v. Samsung Elecs. Am., Inc.*,
   2013 WL 3654090 (D.N.J. July 11, 2013) ...........................................13, 33, 34

*Barrett v. Tri-Coast Pharmacy, Inc.*,
   518 F. Supp. 3d 810 (D.N.J. 2021) ..............................................................29, 30

*Bd.-Tech Elec. Co. v. Eaton Elec. Holdings LLC*,
   2017 WL 4990659 (S.D.N.Y. Oct. 31, 2017), *aff'd sub nom. Bd.-
   Tech Elec. Co. v. Eaton Corp.*, 737 F. App'x 556 (2d Cir. 2018) .....................15

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................11

*Billings v. TD Bank, NA*,
   2013 WL 3989572 (D.N.J. Aug. 1, 2013) .......................................................40

*Bohus v. Restaurant.com, Inc.*,
    784 F.3d 918 (3d Cir. 2015) ...............................................................39

*Bowen v. Hyundai Motor Am.*,
    2016 WL 3466085 (D.N.J. June 22, 2016) .......................................20

*Boyko v. Am. Int'l Grp., Inc.*,
    2009 WL 5194425 (D.N.J. Dec. 23, 2009) .......................................38

*Brookshire Bros. Holding, Inc. v. Total Containment, Inc.*,
    2006 WL 3095651 (W.D. La. Oct. 27, 2006) ....................................15

*Burt v. Makita USA, Inc.*,
    212 F. Supp. 2d 893 (N.D. Ind. 2002) .......................................15, 26

*Cannon v. Ashburn Corp.*,
    2016 WL 7130913 (D.N.J. Dec. 7, 2016) ....................................13, 38

*In re Caterpillar, Inc., C13 & C15 Engine Prods.*,
    2015 WL 4591236 (D.N.J. July 29, 2015) .......................................18

*Cipollone v. Liggett Grp., Inc.*,
    893 F.2d 541 (3d Cir. 1990), *overruled on other grounds*, 505 U.S.
    504 (1992) .........................................................................................31

*Coba v. Ford Motor Co.*,
    932 F.3d 114 (3d Cir. 2019) ............................................................12

*Davis v. Wells Fargo*,
    824 F.3d 333 (3d Cir. 2016) ............................................................11

*Dewey v. Volkswagen AG*,
    558 F. Supp. 2d 505 (D.N.J. 2008) .................................................24

*Doe v. Princeton Univ.*,
    30 F.4th 335 (3d Cir. 2022) ...............................................................4

*Dzielak v. Whirlpool Corp.*,
    2019 WL 6607220 (D.N.J. 2019) ................................................28, 38

*Eberhart v. LG Elecs. USA, Inc.*,
    188 F. Supp. 3d 401 (D.N.J. 2016) .................................................27

*In re: Elk Cross Timbers Decking Mktg.*,
   2015 WL 6467730 (D.N.J. Oct. 26, 2015) ..................................................32, 35

*Ensey v. Gov't Emps. Ins. Co.*,
   2013 WL 5963113 (D.N.J. Nov. 7, 2013) ........................................................39

*Fabricatore v. ADT LLC*,
   2018 WL 3696581 (D.N.J. Aug. 3, 2018) ........................................................11

*In re: Ford Motor Co. Ignition Switch*,
   2001 WL 1266317 (D.N.J. Sept. 30, 1997) ......................................................31

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009) ...........................................................................30

*Frederico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007) .............................................................12, 23, 31

*Fuqua v. Bristol-Myers Squibb Co.*,
   926 F. Supp. 2d 538 (D.N.J. 2013).............................................................21, 22

*Gov't Emps. Ins. Co. v. Ningning He*,
   2019 WL 5558868 (D.N.J. Oct. 29, 2019) ........................................................36

*Gray v. Bayer Corp.*,
   2009 WL 1617930 (D.N.J. June 9, 2009).........................................................22

*Green v. G.M.C.*,
   2003 WL 21730592 (N.J. Super. Ct. App. Div. July 10, 2003) ........................27

*Green v. Green Mountain Coffee Roasters, Inc.*,
   279 F.R.D. 275 (D.N.J. 2011)..........................................................................33

*Greenstar, LLC v. Marmero*,
   2022 WL 5060317 (N.J. Super. Ct. App. Div. Oct. 5, 2022) ............................20

*Hammer v. Vital Pharms., Inc.*,
   2012 WL 1018842 (D.N.J. Mar. 26, 2012) ......................................................30

*Hoffman v. Nordic Naturals, Inc.*,
   2014 WL 1515602 (D.N.J. Apr. 17, 2014)........................................................16

*Jenkins v. Superintendent of Laurel Highlands*,
    705 F.3d 80 (3d Cir. 2013) ...............................................................20

*Johnson v. Wynn's Extended Care*,
    635 F. App'x 59 (3d Cir. 2015) .........................................................39

*Kanter v. Barella*,
    489 F.3d 170 (3d Cir. 2007) .............................................................12

*Kaplan v. General Electric Company et al.*,
    No. 2:22-cv-05296-BRM-ESK (D.N.J.).......................................2, 10

*Koronthaly v. L'Oréal USA, Inc.*,
    374 F. App'x 257 (3d Cir. 2010) .......................................................18

*Koski v. Carrier Corp.*,
    347 F. Supp. 3d 1185 (S.D. Fla. 2017) .............................................15

*Levari Enterprises, LLC v. Kenworth Truck Co.*,
    2021 WL 672657 (D.N.J. Feb. 22, 2021) .........................................28

*Levari Enters., LLC v. Kenworth Truck Co.*,
    2022 WL 248101 (D.N.J. Jan. 27, 2022)..........................................30

*Lieberson v. Johnson & Johnson Consumer Companies, Inc.*,
    865 F. Supp. 2d 529 (D.N.J. 2011).......................................24, 33, 34

*Luppino v. Mercedes-Benz USA, LLC*,
    2011 WL 2470625 (D.N.J. June 20, 2011)..................................30, 35

*Majdipour v. Jaguar Land Rover N. Am., LLC*,
    2015 WL 1270958 (D.N.J. Mar. 18, 2015) .......................................27

*Marquez v. IMER USA, Inc.*,
    2019 WL 8226021 (D.N.J. July 11, 2019) ........................................32

*Mason v. Coca-Cola Co.*,
    774 F. Supp. 2d 699 (D.N.J. 2011)...................................................18

*McGuire v. BMW of N. Am., LLC*,
    2014 WL 2566132 (D.N.J. June 6, 2014) .........................................37

*McQueen v. BMW of N. Am., LLC*,
2013 WL 4607353 (D.N.J. Aug. 29, 2013) .......................................................26

*Metcalfe v. Biomet, Inc.*,
2019 WL 192902 (D.N.J. Jan. 15, 2019).....................................................31, 32

*Mladenov v. Wegmans Food Markets, Inc.*,
124 F. Supp. 3d 360 (D.N.J. 2015)...............................................................*passim*

*Naprstek v. Ditech Fin. LLC*,
2022 WL 2816898 (D.N.J. July 19, 2022) (CFA)............................................20

*Neale v. Volvo Cars of N. Am.*,
2021 WL 3013009 (D.N.J. July 15, 2021) ........................................................17

*Noble v. Samsung Elecs. Am., Inc.*,
2018 WL 801590 (D.N.J. Feb. 8, 2018) .....................................................23, 36

*Parker v. Pressler & Pressler, LLP*,
650 F. Supp. 2d 326 (D.N.J. 2009).............................................................21, 22

*Peruto v. TimberTech Ltd.*,
126 F. Supp. 3d 447 (D.N.J. 2015).....................................................................31

*Powell v. Subaru of Am., Inc.*,
502 F. Supp. 3d 856 (D.N.J. 2020).....................................................................35

*Rapid Models & Prototypes, Inc. v. Innovated Solutions*,
71 F. Supp. 3d 492 (D.N.J. 2014).......................................................................25

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*,
683 F.3d 239 (6th Cir. 2012) ..............................................................................25

*In re Riddell Concussion Reduction*,
77 F. Supp. 3d 422 (D.N.J. 2015)................................................................13, 23

*Ritz Hotels Servs., LLC v. Bhd. of Amalgamated Trades Loc. Union
514*, 2019 WL 4746351 (D.N.J. Sept. 30, 2019)................................................25

*Rivera v. Rosenberg & Assocs., LLC*,
142 F. Supp. 3d 149 (D.D.C. 2015)....................................................................12

*Russo v. Thor Indus., Inc.*,
2020 WL 5868801 (D.N.J. Oct. 1, 2020) ...........................................................34

*Santiago v. Total Life Changes LLC*,
2021 WL 5083835 (D.N.J. Nov. 2, 2021) .......................................12, 16, 22, 37

*SAT Agiyar, LLC v. 7-Eleven, Inc.*,
2020 WL 3546821 (D.N.J. June 30, 2020)........................................................23

*Schechter v. Hyundai Motor Am.*,
2019 WL 3416902 (D.N.J. July 29, 2019) .......................................................27

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
2009 WL 2043604 (D.N.J. July 10, 2009) .......................................................19

*Schuylkill Energy Res., Inc. v. Penn. Power & Light Co.*,
113 F.3d 405 (3d Cir. 1997) ...............................................................................12

*Shelton v. Restaurant.com Inc.*,
2010 WL 2384923 (D.N.J. June 15, 2010), *aff'd in part, vacated in
part on other grounds*, 543 F. App'x 168 (3d Cir. 2013)...................................38

*Simner v. LG Elecs. U.S.A., Inc.*,
2022 WL 3152707 (D.N.J. Aug. 8, 2022) ...................................................30, 35

*Smajlaj v. Campbell Soup Co.*,
782 F. Supp. 2d 84 (D.N.J. 2011)................................................................18, 19

*Stone v. Prudential Fin., Inc.*,
2021 WL 5413989 (D.N.J. Nov. 19, 2021) .......................................................37

*Sun Chem. Corp. v. Fike Corp.*,
235 A.3d 145 (N.J. 2020) ..................................................................................28

*Sun Chem. Corp. v. Fike Corp.*,
981 F.3d 231 (3d Cir. 2020) ..............................................................................29

*Suriaga v. Gen. Elec. Co.*,
2019 WL 6799613 (D.N.J. Dec. 12, 2019)..................................................20, 21

*Tate George v. E. Orange Hous. Auth.*,
2016 WL 7428790 (D.N.J. Nov. 10, 2016), *aff'd*, 687 F. App'x 122
(3d Cir. 2017)......................................................................................................20

*Tatum v. Chrysler Grp.*,
   LLC, 2012 WL 6026868 (D.N.J. Dec. 3, 2012) ...................................................34

*In re Toshiba Am. HD DVD Mktg. & Sales Pracs.*,
   2009 WL 2940081 (D.N.J. Sept. 11, 2009) ........................................................33

*Trexler v. Dodge City, Inc.*,
   2021 WL 754004 (D.N.J. Feb. 26, 2021) ...........................................................40

*Warren Tech., Inc. v. UL LLC*,
   2018 WL 10550930 (S.D. Fla. Oct. 31, 2018), *aff'd*, 962 F.3d 1324
   (11th Cir. 2020)........................................................................................14, 15, 16

*Watkins v. DineEquity, Inc.*,
   591 F. App'x 132 (3d Cir. 2014) ........................................................38, 39, 40

*Weske v. Samsung Elecs. Am., Inc.*,
   2012 WL 833003 (D.N.J. Mar. 12, 2012) ...........................................................36

**Statutes**

15 U.S.C. § 2301 *et seq.*.................................................................................*passim*

N.J.S.A. 2A:14-1 ..........................................................................................................20

N.J.S.A. 2A:58C-1 *et seq.*...........................................................................................29

N.J.S.A. 12A:2-725.................................................................................................19, 20

N.J.S.A. 56:8-2 *et seq.* ....................................................................................2, 10, 12

N.J.S.A. 56:12-15 .........................................................................................................11

**Other Authorities**

D. N.J. Civ. R. 7.1.1 .......................................................................................................2

N.J.A.C. 5:23-3.8(d)(2)(i) ........................................................................................5, 22

Fed. R. of Civ. P. 9(b) ......................................................................................12, 22, 23

Fed. R. of Civ. P. 12(b)(6) ..........................................................................................11

Resideo Technologies, Inc. ("Resideo") and Honeywell International Inc. ("Honeywell"; collectively "Defendants") submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff Salvatore Badalamenti's Complaint ("Compl.").

## I.    PRELIMINARY STATEMENT

This case, styled as a putative consumer class action, is an improper attempt by Plaintiff's purported "alarm system expert," Jeffery D. Zwirn, to enlist this Court's aid in his campaign to create a market for his products.  As the Complaint and its attachments demonstrate, Zwirn has long argued in many forums that every combination fire and burglar alarm system Defendants produced since 2000 (the "Alarm Systems," as defined in the Complaint), and all similar products produced by other manufacturers, fail to comply with certain standards created and implemented by Underwriters Laboratories, Inc. ("UL") and are therefore "defective."[1]  Zwirn has a pecuniary interest in the adoption of his argument because he holds a patent for a product that he claims would rectify the so-called "defect."  UL, however, specifically rejected Zwirn's arguments and approved the Alarm Systems as compliant with its standards.

After Zwirn's crusade before UL failed, Plaintiff filed this lawsuit advancing the very arguments that UL rejected, relying on Zwirn and an expert report Zwirn

---

[1]   UL is a Nationally Recognized Testing Laboratory that creates and implements safety standards for a variety of products, including the Alarm Systems.

commissioned to agree with him.[2]  Plaintiff alleges that the Alarm Systems are not compliant with UL standards for the reasons Zwirn advocates (but UL rejects), and that Defendants therefore misrepresented the products as "UL listed" to applicable standards.[3]

Putting aside the improper purpose of this lawsuit, the Complaint fails to state a claim upon which relief can be granted.  The Complaint and attached documents concede that the Alarm Systems—including the Honeywell Vista-20P ("Vista-20P") installed in Plaintiff's home—were tested by UL, certified by UL as compliant with applicable UL standards, and UL listed to those standards.  Plaintiff therefore has not (and cannot) plead sufficient facts to plausibly allege that a representation by Defendants that the Alarm Systems were compliant with UL standards, or "UL listed," constituted any form of fraud, misrepresentation, breach of warranty, a violation of the New Jersey Consumer Fraud Act ("CFA") or the Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), or that Defendants acted improperly or were unjustly enriched in any way as a result.  On this basis alone, Plaintiff's Complaint should be dismissed in its entirety, with prejudice.

---

[2]   Local Rule 7.1.1 requires disclosure of "any person or entity that is not a party and is providing funding for some or all of the attorneys' fees and expenses for the litigation" within 30 days of the filing of the Complaint.  Despite Zwirn's apparent funding of at least some of the expenses of this litigation, Plaintiff did not file a disclosure and rejected Defendants' request that a disclosure be filed.

[3]   Plaintiff's Counsel filed a substantively identical class action complaint against other manufacturers of home alarm systems, alleging that all of their combination listed burglar and fire alarms have the same alleged "defect."  *See Kaplan v. General Electric Company et al.*, No. 2:22-cv-05296-BRM-ESK (D.N.J.).

Courts have consistently rejected attempts to assert claims against manufacturers—like the ones Plaintiff attempts to advance here—based on disagreements with UL's interpretation or application of its own standards. Here, Plaintiff—relying on Zwirn and the expert report Zwirn commissioned to agree with his "hypothesized defect"—inappropriately asks this Court to disregard UL's interpretation and application of its own standards for certification of the Alarm Systems. This Court, like others before it, should reject Plaintiff's (and Zwirn's) attempt to make an end-run around the UL certification process.

Plaintiff's Complaint also fails to state a claim for multiple other reasons: (i) Plaintiff failed to allege injury, as the Vista-20P installed in his home seems to have worked without incident for the past six years; (ii) his claims are time-barred; (iii) he does not plead his fraud-based claims with the required particularity; (iv) his common law tort claims are barred by the economic loss rule; (v) he failed to satisfy conditions precedent and other statutory requirements for his warranty claims; (vi) his unjust enrichment claim is duplicative and fails for lack of privity; and (vii) Defendants are not "sellers" and Plaintiff failed to identify any "illegal term or warranty" to support his TCCWNA claim.

For all these reasons, which are more fully detailed herein, Defendants respectfully request that the Court dismiss Plaintiff's Complaint in its entirety, with prejudice.

## II.   RELEVANT FACTS AND PROCEDURAL HISTORY[4]

### A.   Defendants and the Vista-20P

The Vista-20P is a "combination listed burglar and fire alarm system control unit."  (Compl. ¶ 19.)  The common feature of the Vista-20P and similar Alarm Systems, as defined in the Complaint, is that they use a "single data-bus circuit" to manage both burglar alarm and fire alarm connected devices.  (*Id*. ¶ 41.)

Until 2018, Honeywell was a "manufacturer of . . . home security products," including the Vista-20P.  (*Id*. ¶ 2.)  Resideo, and Honeywell's home security product manufacturing business, spun off from Honeywell in 2018.  Since that time, Resideo has manufactured the Vista-20P, as well as other home security products, utilizing the Honeywell trademark pursuant to a license from Honeywell.  (*See Id*. ¶ 3.)  Plaintiff does not contend that he purchased his Vista-20P from either Defendant, as Defendants do not sell their products directly to consumers.

### B.   Plaintiff Concedes that UL Tested and Certified the Vista-20P as Compliant with Applicable Standards

Plaintiff alleges that the Alarm Systems, including Vista-20Ps, are governed by UL standards (specifically, UL 985 and UL 1023) and NFPA 72.  (*Id*. ¶ 42.)

The National Fire Protection Association ("NFPA") developed NFPA 72, which "covers the application, installation, location, performance and maintenance

---

4   This factual account comprises, and the Court may consider: (i) the allegations in the Complaint, (ii) its attachments, and (iii) documents incorporated by reference.  *See Doe* v. *Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022).

of fire alarm systems and their components."  (*Id.* ¶ 43.)  "While NFPA standards outline some requirements for the performance of fire and combination-listed alarm equipment, the actual implementation and testing of those requirements in equipment is conducted by Nationally Recognized Testing Laboratories" ("NRTLs"), such as UL.  (*Id.* Ex. F at 11.)  As per the Complaint, "NFPA 72 requires that only equipment that is listed for its intended use [by UL] be installed," which "ensures that there is an independent entity responsible for compliance (the NRTL [*i.e.*, UL])."  (*Id.*); *see also* N.J.A.C. 5:23-3.8(d)(2)(i) (under New Jersey law, "only [electrical] products listed, labeled, approved, and identified are acceptable" and "[a]pproval is . . . based on tests and listings of testing laboratories such as [UL]").

UL is an organization that "conduct[s] rigorous independent research and develop[s] safety standards to improve living and working conditions."  (Compl. ¶ 48.)  UL then "publish[es] consensus standards that guide the safety, performance, and sustainability of new products and evolving technologies"—including home security systems.  (*See id.*)  UL, as an NRTL, tests the Alarm Systems for compliance with applicable standards.  (*Id.* ¶ 49.)  "[I]f found acceptable, [UL] 'list[s]' the equipment in accordance with applicable UL Standards."  (*Id.* Ex. F at 11.)

Plaintiff concedes that the Alarm Systems, including the Vista-20P installed in his home, were UL listed (meaning, as explained above, certified by UL as complying with UL's standards).  Plaintiff alleges that Defendants submitted the

Vista-20P's (and all other Alarm Systems') "Combination Control Unit to UL to have it tested for compliance with applicable UL Standard 1023, UL Standard 985, and NFPA 72," and his expert confirms that UL certified and thereby listed the Vista-20P to applicable standards.  (*Id.* ¶ 49 and Ex. F at 25 (stating that the "Vista 20P control unit is listed under UL 985, 1023," and other applicable standards).)  Nevertheless, Plaintiff and his expert contend that UL allowed the Alarm Systems to "become listed despite nonconformities."  (*Id.* ¶ 72 (quoting Ex. F at 24–25).)

### C.  The Complaint Does Not Allege Any Misrepresentation of the Vista-20P's Compliance with Applicable Safety Standards

Plaintiff alleges that "in or around 2016," a Vista-20P "was installed" in his New Jersey home.  (*Id.* ¶¶ 18–19.)  Plaintiff does not state when in 2016 he purchased the unit, how much it cost, from whom he purchased it, or who installed it in his home.  (*See id.* ¶¶ 19–26.)

Plaintiff alleges that Defendants "advertis[ed], promot[ed], market[ed], . . . and represent[ed]" that the Alarm Systems, including the Vista-20P, "met applicable sections of UL and NFPA 72 Standards."  (*Id.* ¶ 11.)  There are no allegations about what Defendants actually did to advertise, promote, market or represent anything about the Alarm Systems in an improper, negligent or fraudulent manner.  The extent of the representations made by Defendants identified in the Complaint is that the Vista-20P was "UL listed" to certain applicable UL standards.

- 6 -

The "schematic" Plaintiff relies upon states only that the "equipment should

be *installed in accordance with* . . . National Fire Alarm Code, ANSI/NFPA 72":



(*Id.* ¶ 21 (emphasis added).)  The "circuit board" pointed to by Plaintiff, on its face,

makes only the following representation concerning UL:



(*Id.* ¶ 21.)

The installation guide only contains guidance for the *installation* of the

Vista-20P according to recommendations contained in NFPA 72, and states that the

unit "complies with NFPA requirements for temporal pulse sounding" (requirements

that are not addressed in the Complaint at all).  (*Id.* Ex. A.)  And, the product detail

sheet states only that the Vista-20P is "cETLus Listed" and "cULus Listed" to UL

985, UL 1023 and other applicable standards.  (*Id.* Ex. A.)

Plaintiff fails to point to any misrepresentation or improper conduct by

Defendants because, as explained above, he concedes that these representations are

true: Defendants' Alarm Systems were indeed tested and certified by UL, and UL listed the Alarm Systems to applicable standards (which UL develops and implements).

Even if Plaintiff identified any misrepresentation concerning compliance with applicable standards, Plaintiff does not allege that he viewed (or relied upon) any such alleged representations before he purchased or installed a Vista-20P in his home.[5]   Plaintiff's failure to allege misrepresentations or reliance on those misrepresentations is fatal to all of his claims.

### D.   The Complaint is Based On Zwirn's Disagreements with UL, Not Any Fraud, Misrepresentation, or Breach of Warranty by Defendants

Plaintiff does not dispute that his Vista-20P had been tested, certified, and listed by UL.  Rather, based on the opinion of Zwirn and the purported expert report Zwirn commissioned, Plaintiff alleges that UL allowed "combination-listed control units [to] become listed despite nonconformities."  (*Id.* ¶ 72, Ex. F at 24–25.)

The Complaint relies upon Zwirn's theory that "all combination-listed single data-bus burglar and fire alarm system control units" are defective because, if a short circuit condition is introduced to non-fire equipment and/or its interconnected data-bus wiring (by fire or some other manual intervention), the fire portion of the alarm

_____

[5]   Plaintiff could not have received the "installation guide" and "product detail sheet" attached to the Complaint when his unit was installed in 2016, as they are dated 2020 and 2021.

system will not function.  (*Id.* ¶¶ 4–9; *see id.* ¶¶ 24, 37, 58–73, Ex. F at 15.)  Zwirn and his commissioned experts opine that this alleged defect "would be a violation of UL 1023 and UL 985, at the very least for systems listed since 2000, if not earlier." (*Id.* Ex. F at 15.)  The Complaint alleges that there are "15 million" alarm systems affected by this alleged nonconformity with UL standards.  (*Id.* ¶ 75.)  Zwirn holds a patent for a product that will allegedly rectify "non-conforming combination-listed fire and burglar alarm control units," which cost approximately $100 each.  (*Id.* ¶ 79, Ex. F at 4.)

Significantly, Plaintiff's Complaint explicitly acknowledges that UL rejected Zwirn's criticism of its certification practices.  In 2020, Zwirn sent UL a "forensic expert report" and claimed that "UL [did] not properly perform its certification functions." (*See id.* Ex. F at 81.)  UL "disagreed[d]," explained the technical reasons why Zwirn was wrong, and reconfirmed that UL properly certified the Alarm Systems.  (*Id.* at 81–82.)  UL also noted that it had not "received information of field incidents associated with these products" and invited Zwirn to provide examples. (*Id.* at 82.)  Plaintiff himself does not allege that the purported "defect" has manifested itself in any way or caused any damage or alarm failure, in any product, anywhere, ever.

Despite UL's continued approval of the Vista-20P, Zwirn commissioned Combustion Science & Engineering, Inc. ("CSE") to agree with his argument that

UL is wrong about its own standards and testing.  (*See id.* ¶¶ 71–72, Ex. F at 1.)  In a report dated July 5, 2022, CSE supplied an opinion agreeing with Zwirn that the supposed defect he identified would violate UL and NFPA standards.  (*Id.* ¶ 72; *see generally id.* Ex. F.)  Acknowledging that UL rebuffed Zwirn, CSE challenges UL's "interpretation" of its own standards.  (*Id.* Ex. F at 16–24.)  CSE acknowledges that UL has never encountered the theoretical defect identified by Zwirn.  (*Id.* at 22–23.)

### E.   <u>Plaintiff's Claims</u>

Plaintiff filed the Complaint—parroting Zwirn's hypothesis and technical jargon—on September 16, 2022, shortly after his counsel filed a substantively identical lawsuit against other home alarm system manufacturers.[6]  Plaintiff alleges that he "first learned" of the supposed "defect" and nonconformance with applicable standards in August 2022.  (*Id.* ¶ 25.)  Plaintiff does not explain how he "learned" of this supposed defect, and does not allege that the Vista-20P installed in his home has malfunctioned in any way.

Disregarding UL's listing of the Vista-20P and his otherwise threadbare allegations, Plaintiff asserts the following eight causes of action against Defendants: (i) violation of the CFA, N.J.S.A. 56:8-2 *et seq.*; (ii) common law fraud; (iii) negligent misrepresentation; (iv) breach of express warranty; (v) breach of the implied warranty of merchantability; (vi) violation of the Magnuson-Moss Warranty

---

[6]   *See Kaplan*, No. 2:22-cv-05296-BRM-ESK, ECF No. 1.

Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*; (vii) Unjust Enrichment; and, (viii) violation of TCCWNA, N.J.S.A. 56:12-15. (Compl. ¶¶ 80–141.) Plaintiff seeks to represent a Nationwide Class and New Jersey Subclass of "[a]ll persons or entities . . . who own, or have owned, an Alarm System." (Compl. ¶ 74.)

## III.   LEGAL STANDARD

A complaint cannot survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Assessing if allegations are "plausible is a context-specific task" requiring both the Court's "judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Although the Court typically accepts a complaint's factual allegations as true, it should "disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). The Court need not accept Plaintiff's version of events when "the complaint's factual allegations are contradicted by exhibits incorporated by reference." *Fabricatore v. ADT LLC*, 2018 WL 3696581, at *6 (D.N.J. Aug. 3,

2018) (quoting *Rivera v. Rosenberg & Assocs., LLC*, 142 F. Supp. 3d 149, 161 (D.D.C. 2015)).   Nor must the Court accept "unsupported conclusions and unwarranted inferences," when "assertions are belied by both the remaining factual allegations and the law." *Schuylkill Energy Res., Inc. v. Penn. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997).

Under Federal Rule of Civil Procedure 9(b)'s heightened pleading standard, fraud-based claims must "state the circumstances of the alleged fraud with sufficient particularity" and "inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); *Kanter v. Barella*, 489 F.3d 170, 175 (3d Cir. 2007) (requiring plaintiffs to set forth "the 'who, what, when, where, and how'" of the alleged fraud).

## IV.   ARGUMENT

### A.   All of Plaintiff's Claims Fail Because it is Undisputed that the Alarm Systems Were Tested and Listed by UL

Some form of fraud, misrepresentation, or breach of warranty is a necessary element of every one of Plaintiff's causes of action.[7]   Each of Plaintiff's claims is

---

[7]   Fraud, misrepresentation, or breach of warranty is an element of Plaintiff's claims for violation of the CFA (Count 1), fraud (Count 2), negligent misrepresentation (Count 3), breach of express warranty (Count 4), and violation of the MMWA (Count 6).   *See* N.J.S.A. 56:8–2 (CFA); *Coba v. Ford Motor Co.*, 932 F.3d 114, 124–25 (3d Cir. 2019) (discussing omission-based claims under CFA); *Frederico*, 507 F.3d at 200 (common law fraud requires "material misrepresentation"); *Santiago v. Total Life Changes LLC*, 2021 WL 5083835, at *4, 6 (D.N.J. Nov. 2, 2021) (negligent misrepresentation requires an "incorrect statement," and breach of express warranty requires that a product "not conform to [an] affirmation, promise or description"); *id.* at *5 (MMWA relies on breach of express or implied warranty).   Plaintiff's remaining claims for breach of the

based on the allegation that Defendants misrepresented the Vista-20P as UL tested and listed to applicable UL standards. (Compl. ¶¶ 11, 80–141.) The Complaint and exhibits attached thereto, however, concede—as they must—that the Vista-20P was tested and listed by UL as complying with applicable standards. Plaintiff, therefore, has not plausibly alleged any fraud, misrepresentation, or breach of warranty, as necessary to support any of the causes of action alleged in the Complaint. The Alarm Systems were marked as UL listed to the standards to which UL certified compliance.

Plaintiff relies on the following representations in the Vista-20P materials copied in and attached to the Complaint: (1) a "UL Listed" sticker on the "circuit board" (*Id.* ¶¶ 20–21); and, (2) a statement on the "product detail sheet," under "Agency Listings," that the Vista-20P is "cULus Listed to: . . . UL 985 – Household Fire Warning System Units . . . [and] UL 1023 Household Burglar Alarm System Units." (*Id.* ¶ 22, Ex. A.)[8]

---

implied warranty of merchantability (Count 5), unjust enrichment (Count 7), and violation of TCCWNA (Count 8) are all dependent on the same allegations of fraud, misrepresentation, or breach of warranty or some allegation that a representation violated applicable law. *See Avram v. Samsung Elecs. Am., Inc.*, 2013 WL 3654090, at *10 (D.N.J. July 11, 2013) (implied warranty of merchantability requires product fails in its "ordinary purpose," which Plaintiff alleges to be based on alleged nonconformance with applicable standards); *In re Riddell Concussion Reduction*, 77 F. Supp. 3d 422, 439–40 (D.N.J. 2015) (unjust enrichment based on false advertising fails with underlying claims); *Cannon v. Ashburn Corp.*, 2016 WL 7130913, at *10 (D.N.J. Dec. 7, 2016) (TCCWNA requires representation that violates "legal right of the consumer or responsibility of the seller").

[8] As explained above, Plaintiff's allegations that the "schematic" and "installation guide" represent that the Vista-20P "meets NFPA 72 standards" or "complies with the NFPA," (Compl. ¶¶ 20–22), are contradicted by the documents copied

The Vista-20P "circuit board" and "product detail sheet" identify the unit as listed to UL standards because the Vista-20P *is* listed to UL standards; neither the circuit board nor product detail sheet misrepresent any information or qualities of the product.  Plaintiff concedes that his Vista-20P was UL tested and "listed under UL 985, 1023" and other applicable standards, and that UL has stood by that certification over Zwirn's protests.  (Compl. ¶ 49 and Ex. F at 24–25, 81–82.)

Plaintiff's claims amount only to an argument that UL improperly tested and certified the Alarm Systems "despite nonconformities" (*id*. ¶ 72, quoting Ex. F at 24–25)—not that Defendants misrepresented that UL tested and listed them.  The expert report Zwirn commissioned spends nearly 10 pages criticizing UL's rejection of Zwirn's theory of noncompliance.   (*Id.* Ex. F at 15–24, 81–82.)   But, disagreements with UL's testing, conclusions or interpretation of its own standards do not make Defendants' representations that the products are "UL listed" false or misleading.

Courts consistently reject attempts to assert claims against manufacturers based on disagreements with UL's interpretation or application of its own standards. *See, e.g.*, *Warren Tech., Inc. v. UL LLC*, 2018 WL 10550930, at \*9 (S.D. Fla. Oct. 31, 2018) (collecting cases), *aff'd*, 962 F.3d 1324 (11th Cir. 2020).  These courts

into and attached to the Complaint.  (*See supra* Section II.C.)  In any event, as the "expert report" attached to Plaintiff's Complaint explains, NFPA standards are incorporated into UL standards, and UL is responsible for the "actual implementation and testing of those requirements." (*Id.* Ex. F at 11.)

acknowledge that UL, as an NRTL, is the "sole arbiter of whether the product in question was compliant" with the standards it developed. *Bd.-Tech Elec. Co. v. Eaton Elec. Holdings LLC*, 2017 WL 4990659, at *6 (S.D.N.Y. Oct. 31, 2017), *aff'd sub nom. Bd.-Tech Elec. Co. v. Eaton Corp.*, 737 F. App'x 556 (2d Cir. 2018); *see also Brookshire Bros. Holding, Inc. v. Total Containment, Inc.*, 2006 WL 3095651, at *1 (W.D. La. Oct. 27, 2006) ("If UL finds that the submitted product samples comply with UL's requirements, the manufacturer may use and place the UL 'Mark' on those products."); *Burt v. Makita USA, Inc.*, 212 F. Supp. 2d 893, 902 (N.D. Ind. 2002) ("UL makes the decision as to whether a product meets its standards so as to warrant the UL label."). It would be improper to adopt Plaintiff's allegations concerning the "proper interpretation" of UL's standards as true on a motion to dismiss. *Warren Tech.*, 962 F.3d at 1328.

Even if the Court could credit Plaintiff's allegations concerning the "proper interpretation" of UL standards as true, an allegation that UL "improperly" certified the Alarm Systems does not support an allegation that Defendants misrepresented that UL certified them. *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1195 (S.D. Fla. 2017). Allegations concerning Zwirn and CSE's testing of the supposed defect are irrelevant, because it is UL's responsibility, not Plaintiff's (nor Zwirn's nor CSE's), to police compliance with UL standards. *See Bd.-Tech Elec.*, 2017 WL 4990659, at *7 (disregarding "plaintiff's own testing" because "defendants [were]

authorized to apply the mark" and "[i]t is up to [UL] to police the mark"). "Permitting claims like [Plaintiff's] to go forward would undermine both the consensus process . . . that establishes these safety standards and the very purpose of NRTLs like UL, whose primary function and value is in establishing and maintaining safety standards." *Warren Tech.*, 2018 WL 10550930, at \*10.

In sum, every one of Plaintiff's claims requires some allegation of fraud, misrepresentation, or breach of warranty by Defendants, which Plaintiff cannot plausibly allege where he concedes the Vista-20P installed in his home was UL tested and listed to applicable standards. The Complaint should therefore be dismissed in its entirety, with prejudice.

### B.   Plaintiff Fails to Plead Injury

Another fundamental defect of Plaintiff's claims is that he fails to allege injury. Every one of Plaintiff's claims require that he plead a cognizable injury, which the CFA defines as an "ascertainable loss," "capable of calculation, and not just hypothetical or illusory."[9]   Plaintiff does not plead that the Vista-20P malfunctioned or failed in any way, or that Plaintiff suffered any damage. All of the

---

[9]   *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 374 (D.N.J. 2015); *see also Santiago*, 2021 WL 5083835, at \*4–6 (D.N.J. Nov. 2, 2021) (discussing elements for CFA, fraud, negligent misrepresentation, warranty, and unjust enrichment claims); *Hoffman v. Nordic Naturals, Inc.*, 2014 WL 1515602, at \*7 (D.N.J. Apr. 17, 2014) (implied warranty); *Santiago*, 2021 WL 5083835, at \*5 (MMWA relies on breach of express or implied warranty); *Mladenov*, 124 F. Supp. 3d at 380 (dismissing TCCWNA claim for failure to allege injury for underlying CFA claim).

"damages" pled in the Complaint are vague, conclusory, and insufficient to save Plaintiff's claims from dismissal.

Plaintiff's conclusory allegations of "out of pocket losses," including "the amount [he] paid for the Alarm System" (Compl. ¶¶ 16, 90, 132), are insufficient to establish ascertainable loss. "An out-of-pocket-loss theory will suffice only if the product received was essentially worthless." *Mladenov*, 124 F. Supp. 3d at 375 (citation omitted). Plaintiff pleads no facts to support such a conclusion—he never suggests that the Alarm System failed to monitor his home as a result of the alleged defect, nor that it did not otherwise perform the monitoring functions for which he installed it.

Illusory "repair costs" to purchase a component that purportedly cures the supposed defect—for which Zwirn holds a patent (Compl. ¶¶ 79, 90 and Ex. F at 4)—do not plausibly support an allegation of out of pocket losses either. *Neale v. Volvo Cars of N. Am.*, 2021 WL 3013009, at *11 (D.N.J. July 15, 2021) (dismissing CFA claim that sought "to recover the cost to remedy a problem that might not exist caused by a design flaw with no tangible impact on market value"). This is particularly true where Plaintiff does not allege that he has incurred any costs to repair his Alarm System.

Plaintiff's conclusory allegations that he did not receive "the benefit of [his] bargain" or that his Alarm System's value was diminished fare no better. (Compl.

¶¶ 16, 124).  A "benefit-of-the-bargain" loss requires that "the consumer be misled into buying a product that is ultimately worth less than the product that was promised." *Mladenov*, 124 F. Supp. 3d at 375.  Plaintiff must show that he "received a product that 'was worth objectively less than what one could reasonably expect.'" *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 100–01 (D.N.J. 2011) (quoting *Koronthaly v. L'Oréal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010)).

Plaintiff cannot plead any benefit-of-the-bargain loss because he received exactly what was promised: a Vista-20P that was UL listed to applicable standards. Nor does Plaintiff allege any method for quantifying any allegedly diminished value of his Vista-20P.  He has not (and cannot) identify comparative products that lack the alleged defect—rather, the Complaint theorizes that the alleged defect is present in all household combination listed burglar and fire alarm systems going back 20 years.  *See, e.g.*, *In re Caterpillar, Inc., C13 & C15 Engine Prods.*, 2015 WL 4591236, at *38 (D.N.J. July 29, 2015) (dismissing CFA claim because plaintiffs "offered no information to enable [a] comparative analysis" between their allegedly defective product and a non-defective product); *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 704–05 (D.N.J. 2011) (dismissing consumer fraud claims for failure to allege how "the soda they bought was worth an amount of money less than the soda they were promised").  Without pleading a "reasonable means of quantifying the difference in value," Plaintiff fails to plead a benefit-of-the-bargain loss.

- 18 -

Moreover, Plaintiff does not allege that representations about UL listing formed the basis for his bargain such that they could have proximately caused any harm.  Plaintiff must plead that representations were "made to him."  *Smajlaj*, 782 F. Supp. 2d at 99–100.  He does not allege to have viewed any of the representations identified in the Complaint, at any time.  Representations "made to the public generally" lack sufficient nexus to establish ascertainable loss, *even if* those representations "may inflate" the product's price.  *Smajlaj*, 782 F. Supp. 2d at 100; *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 2009 WL 2043604, at \*31 (D.N.J. July 10, 2009) (explaining that "price inflation theory" was not "cognizable under the CFA").

Plaintiff's failure to allege any cognizable injury or damages, which is a required element of each of Plaintiff's causes of action, provides an additional basis for the Court to dismiss the Complaint in its entirety.

### C.    **Plaintiff's Claims Are Time-Barred**

A third, independent basis to dismiss every one of Plaintiff's causes of action is that they are barred by the applicable statute of limitations.  Plaintiff's breach of warranty claims are subject to a four-year statute of limitations.[10]   Plaintiff's remaining CFA, common law fraud, negligent misrepresentation, unjust enrichment,

---

[10]  N.J.S.A. 12A:2-725(1); *Atl. Health Sys., Inc. v. Cummins Inc.*, 2010 WL 5252018, at \*4 (D.N.J. Dec. 17, 2010) (noting that the four-year limit covers both express and implied warranties).

and TCCWNA claims are subject to the New Jersey default limitations period of six years.[11]  Thus, Plaintiff's claims are time-barred to the extent they accrued on or before September 16, 2016—six years preceding the date the Complaint was filed.

Plaintiff alleges that he "had a [Vista-20P] installed in his home in or around 2016."  (Compl. ¶ 19.)  This is far outside the four-year statute of limitations for Plaintiff's breach of warranty claims, which accrue when "delivery is made" and "regardless of the aggrieved party's lack of knowledge" of a supposed breach. *Suriaga v. Gen. Elec. Co.*, 2019 WL 6799613, at *3 (D.N.J. Dec. 12, 2019) (quoting N.J.S.A. 12A:2-725(2)).  Plaintiff conspicuously omits allegations sufficient to plead whether his installation occurred after September 16, 2016, the beginning of the six-year statute of limitations period that applies to Plaintiff's remaining claims.

Recognizing that this lawsuit was filed after the expiration of the applicable statutes of limitations, Plaintiff makes the conclusory argument that equitable tolling preserves his claims.  (Compl. ¶¶ 29–32.)  This "sparingly" used remedy does not apply here.  *Jenkins v. Superintendent of Laurel Highlands,* 705 F.3d 80, 89 (3d Cir. 2013).  Equitable tolling requires a plausible allegation of fraudulent concealment by Defendants and Plaintiff's failure to discover the supposed defect despite the

---

[11]  *See* N.J.S.A. 2A:14-1; *Naprstek v. Ditech Fin. LLC*, 2022 WL 2816898, at *4 (D.N.J. July 19, 2022) (CFA); *Tate George v. E. Orange Hous. Auth.*, 2016 WL 7428790, at *4 (D.N.J. Nov. 10, 2016), *aff'd*, 687 F. App'x 122 (3d Cir. 2017) (fraud and negligent misrepresentation); *Greenstar, LLC v. Marmero*, 2022 WL 5060317, at *4 (N.J. Super. Ct. App. Div. Oct. 5, 2022) (unjust enrichment); *Bowen v. Hyundai Motor Am.*, 2016 WL 3466085, at *2 (D.N.J. June 22, 2016) (TCCWNA).

"exercise of due care." *Fuqua v. Bristol-Myers Squibb Co.*, 926 F. Supp. 2d 538, 549 (D.N.J. 2013). Plaintiff fails to sufficiently plead either requirement.

Plaintiff fails to allege the circumstances of any fraudulent concealment by Defendants. Plaintiff makes the conclusory allegation that Defendants engaged in "concealment," (Compl. ¶¶ 29–32), but does not explain what actions Defendants supposedly took, or when. *See Suriaga*, 2019 WL 6799613, at *4 (rejecting equitable tolling where the plaintiff failed to allege sufficient facts to show how the defendant "specifically misrepresented or tricked" plaintiff into thinking product was non-defective); *see also Parker v. Pressler & Pressler, LLP*, 650 F. Supp. 2d 326, 339 (D.N.J. 2009) (no tolling when plaintiff does not allege what "defendants did to mislead or otherwise prevent her from timely filing her complaint"). Plaintiff's allegations of fraudulent concealment are not only conclusory, but implausible in light of the fact the products were, in fact, UL listed. (*See supra* at §§ II.B., IV.A.)

Nor does Plaintiff plead "the requisite due diligence to warrant the application of equitable tolling." *Suriaga*, 2019 WL 6799613, at *4. Plaintiff alleges that the alleged nonconformity with UL standards was present at the time the Vista-20P was installed in his home in 2016. Thus, to the extent there was any such nonconformity, which there was not, it would have been discoverable at that time by Plaintiff himself or whoever installed the Alarm System—and should have been discovered, as the

Complaint alleges that NFPA 72 and New Jersey law require the installation of equipment that is UL listed.  (Compl. Ex. F at 11; *see also* N.J.A.C. 5:23-3.8(d)(2)(i).)  Plaintiff alleges only that he exercised "due diligence," but does not describe any actions he took.  (Compl. ¶¶ 29, 31.)  Such "vague and conclusory allegations" are not enough.  *Parker*, 650 F. Supp. 2d at 339 (no tolling when plaintiff does not show the he "diligently investigated, pursued, or attempted to preserve [his] claims"); *see Fuqua*, 926 F. Supp. 2d at 550 (rejecting attempt to toll statute of limitations where the complaint was "devoid of any facts relating to the exercise of due diligence on the part of Plaintiffs to discover the existence of fraud notwithstanding Defendant's alleged wrongdoing").  Thus, all of Plaintiff's claims should be dismissed as he fails to plead that he purchased his Vista-20P and had it installed in his home in the six years preceding this lawsuit.

### D.    **Plaintiff's Claims Fail for Additional, Independent Defects**

#### 1.    **Plaintiff's Fraud-Based Claims Are Not Pled with Particularity and are Otherwise Flawed**

##### a.    *Plaintiff Fails to Allege his Fraud-Based Claims with Particularity*

Plaintiff's fraud-based claims—for violation of the CFA, common law fraud, negligent misrepresentation, and unjust enrichment—must satisfy the heightened pleading requirements of Rule 9(b).[12]  This "stringent pleading restriction," requires

---

[12]    *See Santiago*, 2021 WL 5083835, at 6 (common law fraud and CFA claims require heightened pleading); *Gray v. Bayer Corp.*, 2009 WL 1617930, at *2

Plaintiff to allege (at a minimum) the "date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation" into his fraud allegations. *Frederico*, 507 F.3d at 200. Plaintiff fails to satisfy Rule 9(b).

Plaintiff's bare allegation that Defendants somehow misrepresented that the Alarm Systems "met the requirements set forth in applicable sections of UL and NFPA 72 standards" falls short of this standard. (*See* Compl. ¶ 11.) He does not allege or specify: (i) what advertisements, promotions, or marketing materials carry these representations; (ii) what specific statements those materials made; (iii) what medium carried these representations; (iv) when they were made; (v) if he even saw the representations; or (vi) if he would have even understood or attached meaning to any statements about UL or NFPA standards.

Such generalized allegations fail Rule 9(b). *See, e.g.*, *SAT Agiyar, LLC v. 7-Eleven, Inc.*, 2020 WL 3546821, at *5 (D.N.J. June 30, 2020) (dismissing fraud claims where "[p]laintiff fails to plead any specificity regarding the date, time, or place of the alleged misrepresentations"); *Noble v. Samsung Elecs. Am., Inc.*, 2018 WL 801590, at *5 (D.N.J. Feb. 8, 2018) (collecting cases where "fraud claims were dismissed when a plaintiff . . . did not specify which advertisements he or she had seen, or whether he or she viewed the statements in any particular medium");

---

(D.N.J. June 9, 2009) (claims for negligent misrepresentation based upon "an allegedly false representation . . . are grounded in fraud and subject to Rule 9(b)"); *In re Riddell*, 77 F. Supp. 3d at 433 & n.11 (same for unjust enrichment).

*Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F. Supp. 2d 529, 539 (D.N.J. 2011) (dismissing fraud claim when "plaintiff has not identified whether [supposed falsehoods] were made in a television commercial, print advertisement, on a website or elsewhere").  On this additional basis, Plaintiff's fraud-based claims (Counts 1, 2, 3, and 7) should be dismissed.

> **b.**   ***Plaintiff Does Not Plausibly Allege Reliance or a Causal Nexus to the Alleged Harm***

Relatedly, Plaintiff's fraud-based claims all fail because Plaintiff does not allege that he viewed any representations concerning UL or NFPA standards prior to his purchase.  Plaintiff cannot show either "reliance" to establish common law fraud, misrepresentation, and unjust enrichment or a "causal nexus" under the CFA. He completely fails to allege what statements he relied on when he purchased the products.  *See Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 526–27 (D.N.J. 2008) (dismissing fraud claims—irrespective of any potential misrepresentations— because plaintiffs failed to allege that they ever relied on the representations). Plaintiff does not describe when (or even if) he saw the "schematic and circuit board," "installation guide," and "product detail sheet" referred to in the Complaint.[13]  Failure to plead this essential fact requires dismissal of Plaintiff's four fraud-based claims.  *See, e.g.*, *Mladenov*, 124 F. Supp. 3d at 373–78 (dismissing

---

[13]   As previously explained, Plaintiff could not have relied on the instruction manual and product detail sheet attached to the Complaint, as they are dated 2020 and 2021, respectively.  (*See* Compl. ¶ 22, Ex. A.)

fraud-based claims for failure to identify misrepresentation viewed prior to purchase); *Rapid Models & Prototypes, Inc. v. Innovated Solutions*, 71 F. Supp. 3d 492, 504–05 (D.N.J. 2014) (similar).

### c. *Plaintiff Does Not Plausibly Allege Defendants' Knowledge of the Alleged Fraud*

In addition, the Complaint itself undermines Plaintiff's conclusory allegations that Defendants: (i) "knew or should have known" that Plaintiff's Alarm System was noncompliant with applicable standards (*see* Compl. ¶¶ 12, 73); and (ii) "intended" Plaintiff to rely on the alleged "misrepresentations or omissions," (*Id*. ¶¶ 86–87, 96, 101). To plead "knowledge" and/or "intent" for fraud-based claims, a plaintiff is required to make sufficient factual allegations "about the defendant's mental state" that, if true, "make the state-of-mind allegation plausible on its face." *Ritz Hotels Servs., LLC v. Bhd. of Amalgamated Trades Loc. Union 514*, 2019 WL 4746351, at *3 (D.N.J. Sept. 30, 2019) (quoting *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012)).

Defendants, here, could not possibly have any knowledge or intent to fraudulently represent the Alarm Systems as UL-compliant because Defendants are not the arbiter of compliance with those standards. Plaintiff concedes that the Alarm Systems were subject to UL testing and were listed by UL. (Compl. ¶ 49, Ex. F at 25.) Plaintiff himself acknowledges UL's authoritative role as an "independent" testing authority. (*Id.* ¶ 48, Ex. F at 11.) Because UL decides "whether a product

meets its standards," Defendants could not have knowledge of the Vista-20P's noncompliance nor intent to improperly represent it as compliant where UL itself certified it as compliant. *See Burt*, 212 F. Supp. 2d at 902.

Even if Defendants had any involvement or responsibility for UL's listing of the Alarm Systems, Plaintiff fails to allege: (i) how Defendants learned of the alleged noncompliance; (ii) who in the companies knew about it; (iii) when these individuals learned of it; (iv) how Defendants concealed the issue from UL; or (v) who decided to hide that information from the public.  The Complaint therefore lacks factual support for Defendants' alleged knowledge and concealment of the alleged noncompliance, and its fraud-based claims should be dismissed.  *See, e.g.*, *Gotthelf v. Toyota Motor Sales, U.S.A.,* Inc., 525 F. App'x 94, 104 (3d Cir. 2013) (dismissing CFA claim because "[n]othing in the Complaint provide[d] factual support for Toyota's alleged knowledge and concealment of [a] defect"); *see also McQueen v. BMW of N. Am., LLC*, 2013 WL 4607353, at *6 (D.N.J. Aug. 29, 2013) (dismissing CFA claim where complaint did not "include any information as to when, before the time of [the plaintiff's] purchase" the defendant "learned of the [alleged] defect").

### d.  *Plaintiff Does Not Allege a Duty to Disclose*

Still further, Plaintiff cannot plausibly allege that Defendants had a duty to disclose information that was allegedly omitted concerning its representations that the Alarm Systems were UL listed.  New Jersey law imposes a duty to disclose only:

"(1) when there is a fiduciary relationship between the parties; (2) when one party expressly reposes trust in another party, or else from the circumstances, such trust is necessarily implied; and (3) when the relationship involving the transaction is so intrinsically fiduciary that a degree of trust and confidence is required to protect the parties." *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 603 (D.N.J. 2016).

Defendants owed Plaintiff no such duty. Manufacturers selling products have no "special relationship" that creates an "affirmative duty to disclose." *See, e.g.*, *id.* (HVAC manufacturer owes no affirmative duty to disclose); *Schechter v. Hyundai Motor Am.*, 2019 WL 3416902, at *9 (D.N.J. July 29, 2019) (neither do automakers); *Eberhart v. LG Elecs. USA, Inc.*, 188 F. Supp. 3d 401, 410 (D.N.J. 2016) (same for electronics manufacturers). Plaintiff and Defendants have no fiduciary relationship. Nor did Defendants do anything "to encourage plaintiffs to repose special trust or confidence." *Argabright*, 201 F. Supp. 3d at 603 (quoting *Green v. G.M.C.*, 2003 WL 21730592, at *8 (N.J. Super. Ct. App. Div. July 10, 2003)). Defendants' supposed "superior position" to know of the alleged defect (Compl. ¶ 84) is immaterial because "superior knowledge does not create a duty to disclose under New Jersey law." *Schechter*, 2019 WL 3416902, at *9 (quoting *Majdipour v. Jaguar Land Rover N. Am., LLC*, 2015 WL 1270958, at *8 (D.N.J. Mar. 18, 2015)).

### e.    *Plaintiff's CFA Claim is Simply a Warranty Claim Repackaged as Fraud*

"Claims that sound in breach of warranty, without more, do not constitute a violation under the CFA." *Levari Enterprises, LLC v. Kenworth Truck Co*., 2021 WL 672657, at \*8 (D.N.J. Feb. 22, 2021) (citing *Dzielak v. Whirlpool Corp.*, 2019 WL 6607220, at \*23 (D.N.J. 2019). A plaintiff must plead "substantial aggravating circumstances" to elevate a warranty claim to a consumer fraud violation. *Id.*

Plaintiff's CFA claim is a warranty claim "repackaged" as fraud. The essence of Plaintiff's CFA allegations is that the Alarm System in his home was warranted as compliant with applicable standards, and that it did not live up to that warranty as a result of the alleged defect. (Compl. ¶¶ 80–90.) Plaintiff's conclusory allegations of Defendants' knowledge of and intent to conceal the alleged defect do not qualify as "substantial aggravating circumstances" necessary to support a CFA claim. Moreover, the fact that UL tested and listed the Alarm Systems is directly contrary to any substantial aggravating circumstance required to sufficiently plead a claim.

### 2.    **The Economic Loss Doctrine Bars Plaintiff's Tort Claims**

Plaintiff's claims for violation of the CFA, common law fraud, and negligent misrepresentation, in addition to their above-described fundamental defects, are barred by the economic loss rule. "[C]onsequential but purely economic losses" incurred over a supposed defective product, absent physical injury, are not cognizable torts. *Sun Chem. Corp. v. Fike Corp.*, 235 A.3d 145, 150 n. 2 (N.J. 2020);

*see also, e.g.*, *Alloway v. General Marine Indus., L.P.*, 695 A.2d 264, 268, 275 (N.J. 1997); *AgroLabs, Inc. v. Innovative Molding, Inc.*, 2014 WL 3535560, at *3 (D.N.J. July 16, 2014). Plaintiff does not claim that the alleged defect and nonconformity with UL standards resulted in any physical injury. Plaintiff seeks to recover money damages that are not related to any physical injury. (Compl. ¶ 16.) Dismissal of Plaintiff's claims for fraud and negligent misrepresentation is appropriate as they are improperly based on purely economic losses.

To the extent that Plaintiff seeks damages other than purely economic loss as a result of the alleged defect in his Alarm System, his claims are subsumed by the New Jersey Product Liability Act ("PLA"), N.J.S.A. 2A:58C-1 *et seq.* The PLA governs products-liability actions based on "manufacturing defects, warning defects, and design defects." *Sun Chem. Corp. v. Fike Corp.*, 981 F.3d 231, 236 (3d Cir. 2020). The PLA is the exclusive cause of action concerning "harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." *Barrett v. Tri-Coast Pharmacy, Inc.*, 518 F. Supp. 3d 810, 823–24 (D.N.J. 2021) (quoting N.J.S.A. 2A:58C-1(b)). The essence of Plaintiff's allegations is not that Defendants misrepresented any particular features of the Alarm System he purchased, but that the Alarm System was defectively designed, and that Defendants failed to disclose the alleged defect. (Compl. ¶¶ 11, 12, 14.) Thus, to the extent Plaintiff seeks redress for non-economic

"harm" as defined in the PLA, his claims for violation of the CFA, common law fraud, and negligent misrepresentation should be dismissed.  *See Barrett*, 518 F. Supp. 3d at 823–24; *Levari Enters., LLC v. Kenworth Truck Co.*, 2022 WL 248101, at *2–3 (D.N.J. Jan. 27, 2022) (rejecting CFA, negligence, and warranty claims because the claims were "really just a claim for harm from a faulty product").

### 3.   Plaintiff's Warranty Claims Fail

#### a.   *Plaintiff Failed to Provide Pre-Suit Notice*

Plaintiff's warranty claims fail for lack of pre-suit notice.  A condition precedent to filing any suit for breach of warranty is pre-suit notice.  *See Simner v. LG Elecs. U.S.A., Inc.*, 2022 WL 3152707, at *8 (D.N.J. Aug. 8, 2022) (quoting *Hammer v. Vital Pharms., Inc.*, 2012 WL 1018842, at *10 (D.N.J. Mar. 26, 2012)). Without notice, both express and implied warranty claims, and derivative MMWA act claims, "necessarily fail."  *Hammer*, 2012 WL 1018842, at *11; *see Luppino v. Mercedes-Benz USA, LLC*, 2011 WL 2470625, at *3 (D.N.J. June 20, 2011) (dismissing express warranty and MMWA claims for failure to allege notice).

Plaintiff's allegation that he "notified Defendants" of their supposed breach "within a reasonable time and/or was not required to do so because" it "would have been futile," (*see* Compl. ¶ 108) is but a "threadbare recital[]" of an element that "do[es] not suffice" to satisfy the notice requirement.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Plaintiff provided no pre-suit notice, and waited

only weeks between his alleged discovery of the defect and filing of this lawsuit. (*See* Compl. ¶ 25.)  There is also no legal support for Plaintiff's "suggested 'futility' exception."  *In re: Ford Motor Co. Ignition Switch,* 2001 WL 1266317, at *14 (D.N.J. Sept. 30, 1997) (requiring plaintiffs to replead claims under identical New York, California, and Mississippi Uniform Commercial Codes absent evidence of pre-suit notice).  Accordingly, Plaintiff's warranty claims should be dismissed for lack of pre-suit notice.

**b.**   ***Defendants Did Not Breach any Express Warranty***

A breach of express warranty occurs when: "(1) [the defendant] made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and, (3) that the product ultimately did not conform to the affirmation, promise or description."  *Peruto v. TimberTech Ltd.*, 126 F. Supp. 3d 447, 453 (D.N.J. 2015) (quoting *Frederico*, 507 F.3d at 203).  To show the "basis of the bargain," Plaintiff must allege (and specify) that he "read, heard, saw or knew of the advertisement [or other representation] containing the affirmation of fact or promise" and relied on it. *See Metcalfe v. Biomet, Inc.*, 2019 WL 192902, at *3 (D.N.J. Jan. 15, 2019) (quoting *Cipollone v. Liggett Grp., Inc.*, 893 F.2d 541, 567 (3d Cir. 1990), *overruled on other grounds*, 505 U.S. 504 (1992)).  Plaintiff does not meet any of these requirements.

As explained above, Plaintiff's Alarm System "conformed" to its description—the Alarm System was represented as listed to applicable UL standards, and Plaintiff concedes that UL tested and listed the Alarm System. (*See supra* at §§ II.B., IV.A.); *see Marquez v. IMER USA, Inc.*, 2019 WL 8226021, at *10 (D.N.J. July 11, 2019) (dismissing claim where plaintiffs failed to allege that the product was not in conformity with description). Plaintiff attempts to expand the meaning of "UL listed" to include an "express warranty that the Alarm Systems would not contain the" alleged defect hypothesized by Zwirn, (Compl. ¶ 106), but no such "affirmation, promise or description" is identified in the Complaint.

Even if Plaintiff could allege a breach, his express warranty claim should be dismissed because he does not allege that the challenged representations formed the "basis of the bargain" for his purchase. Plaintiff does not allege that he ever read, heard, saw or knew of the representations identified in the Complaint before the Alarm System was installed in his home. "It strains the language to say that a statement is part of the 'basis' of the buyer's 'bargain,'" when Plaintiff "had no knowledge of the statement's existence." *Metcalfe*, 2019 WL 192902, at *4; *see In re: Elk Cross Timbers Decking Mktg.*, 2015 WL 6467730, at *29 (D.N.J. Oct. 26, 2015) (dismissing warranty claims where "[p]laintiffs have failed to plead which, if any, representations that the [p]laintiffs were aware of").

c.   *Defendants Did Not Breach the Implied Warranty of Merchantability*

Plaintiff's claims for breach of the implied warranty of merchantability likewise fails because he does not plead facts that, if proven, could show that his Alarm System was not "merchantable" when purchased.   To be merchantable, products must only be "fit for the[ir] ordinary purpose."  *In re Toshiba Am. HD DVD Mktg. & Sales Pracs.*, 2009 WL 2940081, at *16 (D.N.J. Sept. 11, 2009). Impairment of the "ordinary purpose" of a product is one that is central to the product's value or function.  *Avram v. Samsung Elec. Am., Inc.*, 2013 WL 3654090, at *13 (D.N.J. July 11, 2013). At bottom, the implied warranty of merchantability "provid[es] for *a minimum level of quality*," not that a good "precisely fulfill[s]" a buyer's esoteric expectations.  *Lieberson*, 865 F. Supp. 2d at 542 (emphasis added).

Plaintiff does not allege his Alarm System was not merchantable.  He never alleges that it failed to operate or monitor his home, or that it malfunctioned in any way.  Even crediting Zwirn's hypothetical "defect," Plaintiff does not allege that this defect manifested in his Alarm System in any way.  In fact, there is no record of, nor allegation of, Zwirn's defect manifesting in the approximately 15 million Alarm Systems Plaintiff alleges were sold to consumers over the past 20 years.  (Compl. Ex. F at 82.)  Even if Zwirn were technically correct about the Alarm System's function, a supposed "defect" (if it could be called that) that has never materialized would not render the Alarm System non-merchantable.  *See*, *e.g.*, *Green v. Green*

- 33 -

*Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 283 (D.N.J. 2011) (rejecting implied warranty of merchantability claim that a single-cup brewing system, although it brewed beverages, failed to brew exactly one cup); *Lieberson*, 865 F. Supp. 2d at 543 (finding no breach of the implied warranty of merchantability where soap and lotion did not help babies sleep, as advertised, because the soap fulfilled its ordinary "purpose of washing and moisturizing babies' skin").

Plaintiff's Alarm System was designed for burglar and fire alarm monitoring and Plaintiff does not contend that it failed in that basic function. *See Avram*, 2013 WL 3654090, at *13 (D.N.J. July 11, 2013) (dismissing implied warranty claim concerning refrigerators that satisfied their ordinary purpose: "to keep perishables cold"). The Court should therefore dismiss Plaintiff's claims for breach of the implied warranty of merchantability.

### d.    *Plaintiff's Magnuson-Moss Warranty Act Claim Fails Because His State Law Claims Fail*

Plaintiff's MMWA claim fails for the same reasons as his state law warranty claims. MMWA "claims based on breaches of express and implied warranties under state law depend upon those state law claims." *Tatum v. Chrysler Grp.*, LLC, 2012 WL 6026868, at *8 (D.N.J. Dec. 3, 2012) (internal citation omitted). "To state a claim under the MMWA, a plaintiff must first adequately plead a claim for breach of warranty under state law." *Russo v. Thor Indus., Inc.*, 2020 WL 5868801, at *3 (D.N.J. Oct. 1, 2020)). Accordingly, Plaintiff's MMWA claim should be dismissed

along with his express and implied warranty claims under New Jersey law for the reasons set forth above.

In addition, Plaintiff did not satisfy MMWA's own notice provision, which, like New Jersey's, required Plaintiff to give Defendants "reasonable opportunity" to cure a defect.  15 U.S.C. § 2310(e); *In re: Elk Cross*, 2015 WL 6467730, at *34 (dismissing MMWA claim when plaintiff alleged only that he "notified" defendant, but "provide[d] no details regarding the contents of the notice or whether [the defendant] was provided an opportunity to cure the alleged defect"); *Luppino*, 2011 WL 2470625, at *3 (dismissing express warranty and MMWA claims for failure to allege notice).  As described above, Plaintiff did not provide any pre-suit notice to Defendants, let alone notice with a reasonable opportunity to cure.

Still further, the Court lacks jurisdiction because no MMWA class action claim "shall be cognizable in suit" without at least 100 named plaintiffs.  *See* 15 U.S.C. § 2310(d)(3); *Simner*, 2022 WL 3152707, at *10 (dismissing MMWA claim for failing to meet "jurisdictional requirement" of 100 named plaintiffs); *see also Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 885 (D.N.J. 2020) (ruling that litigants "may not use [the Class Action Fairness Act] as a means to evade the explicit jurisdictional requirements of the MMWA").  The only plaintiff named in the Complaint is the Plaintiff.

### 4.    Plaintiff Does Not State a Claim for Unjust Enrichment

Unjust enrichment occurs when a defendant receives a benefit "under circumstances that would make it unjust for defendant to retain benefit without paying for it." *Gov't Emps. Ins. Co. v. Ningning He*, 2019 WL 5558868, at *6 (D.N.J. Oct. 29, 2019) (quoting *Arlandson v. Hartz Mt. Corp.*, 792 F. Supp. 2d 691, 711 (D.N.J. 2011)).

Defendants could not be unjustly enriched where Plaintiff has enjoyed the Alarm System for over six years and does not allege that it has malfunctioned in any way.  Still further, there is nothing "unjust" about Defendants' marking of their Alarm Systems as UL listed where Plaintiff admits they were, in fact, UL listed.

Putting aside these fundamental deficiencies, New Jersey law requires a direct relationship before Plaintiff can be found to have conferred a benefit on Defendants. "Indirect purchaser[s]"—like Plaintiff—"cannot succeed on a claim for unjust enrichment." *Weske v. Samsung Elecs. Am., Inc.*, 2012 WL 833003, at *7 (D.N.J. Mar. 12, 2012); *see also Noble*, 2018 WL 801590 at *7 (unjust enrichment requires "a direct relationship between the parties").  Because Plaintiff does not allege that he purchased the Vista-20P directly from Defendants—the Alarm System manufacturers—he cannot state a claim for unjust enrichment. *See*, *e.g.*, *Weske*, 2012 WL 833003, at *7 (third-party purchases do not "confer[] a benefit directly to the manufacturer such that the manufacturer could be found to have been unjustly

enriched"); *Arlandson*, 792 F. Supp. 2d at 711 (denying claim where "Plaintiffs [alleged] that they are unsatisfied with purchases from retailers, yet they want their money returned by the manufacturer"). This cannot be cured by amendment, as Defendants do not sell the Alarm Systems to consumers.

Further, unjust enrichment is "an equitable remedy, available only when there is no adequate remedy at law." *Adamson v. Ortho-McNeil Pharm., Inc.*, 463 F. Supp. 2d 496, 505 (D.N.J. 2006); *McGuire v. BMW of N. Am., LLC*, 2014 WL 2566132, at *3 (D.N.J. June 6, 2014) ("New Jersey does not recognize unjust enrichment as an independent tort cause of action"). As Plaintiff's claim derives from supposed "breaches of warranty, misrepresentations and fraud," (Compl. ¶ 131), his available remedies are "adequate" and negate a claim for unjust enrichment. *See, e.g.*, *Santiago*, 2021 WL 5083835, at *6; *McGuire*, 2014 WL 2566132, at *3. Because Plaintiff has adequate remedies, his unjust enrichment claim must be dismissed with prejudice. *Stone v. Prudential Fin., Inc.*, 2021 WL 5413989, at *3 (D.N.J. Nov. 19, 2021).

Each of these bases provides independent grounds to dismiss Plaintiff's unjust enrichment claim.

### 5. Plaintiff Does Not State a Claim Under the Truth-in-Consumer Contract, Warranty, and Notice Act

Plaintiff's TCCWNA claim suffers from several additional, independent deficiencies that warrant dismissal. TCCWNA claims require that: "(1) plaintiff is

a consumer; (2) defendant is a seller; (3) the seller offers a consumer contract or gives or displays any written notice or sign; and, (4) the contract, notice, or sign includes a provision that violates a legal right of the consumer or responsibility of the seller." *Cannon*, 2016 WL 7130913, at *10. The statute "does not establish consumer rights or seller responsibilities," but only "bolsters rights and responsibilities established by other laws." *Dzielak*, 2019 WL 6607220, at *24 (quoting *Watkins v. DineEquity, Inc.*, 591 F. App'x 132, 134–35 (3d Cir. 2014)). Aside from Plaintiff's alleged status as a consumer, Plaintiff fails to plead any of the required elements of a TCCWNA claim.

*First*, Plaintiff fails to allege that either of Defendants are sellers; Plaintiff does not allege he purchased his Vista-20P from Defendants, or that Defendants sell directly to any consumers. TCCWNA "limits application to . . . purchase[s] of personal products or services directly from the seller." *Shelton v. Restaurant.com Inc.*, 2010 WL 2384923, at *6 (D.N.J. June 15, 2010), *aff'd in part, vacated in part on other grounds*, 543 F. App'x 168 (3d Cir. 2013); *Boyko v. Am. Int'l Grp., Inc.*, 2009 WL 5194425, at *6 (D.N.J. Dec. 23, 2009) ("Thus, it would appear that AIG is not a seller vis-a-vis [the plaintiff] because he has not alleged that AIG sold him anything."). For this reason, by itself, Plaintiff's TCCWNA claim fails.

*Second*, Plaintiff's TCCWNA claim fails because it does not identify a violation of law, and is merely derivative of his CFA claim. (*See* Compl. ¶ 140);

*Mladenov*, 124 F. Supp. 3d at 380 ("Plaintiffs' TCCWNA claims cannot survive to the extent they rely on the alleged CFA violations."); *Ensey v. Gov't Emps. Ins. Co.*, 2013 WL 5963113 at *7 (D.N.J. Nov. 7, 2013) (dismissing TCCWNA claim following dismissal of CFA claim). Plaintiff vaguely alleges that defendants violated some other "clearly established" right, (Compl. ¶ 140), but "rights and responsibilities to be enforced by TCCWNA are drawn from *other legislation*"— and Plaintiff cites no other legislation which could support a TCCWNA claim. *See Watkins*, 591 F. App'x at 134 (emphasis added). This failure provides an additional basis for dismissal.

*Third*, Plaintiff does not allege that Defendants displayed or incorporated into any contract any "illegal terms or warranties." *See Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 930 (3d Cir. 2015). None of the representations concerning UL listing are "illegal"; they accurately describe (as Plaintiff concedes) that UL tested and listed the Alarm Systems to applicable standards. (*Supra* at §§ II.B., IV.A..); *compare Johnson v. Wynn's Extended Care*, 635 F. App'x 59, 61 (3d Cir. 2015) (contract provision waiving attorney's fees and splitting costs violated New Jersey law). New Jersey law simply requires that only UL listed products be installed, and Plaintiff does not dispute that the Vista-20P installed in his home was UL listed.

Allegedly omitted information does not save Plaintiff's TCCWNA claim because "[a] plain reading of the phrase, 'which includes any provision,' indicates"

that the statute covers "only the inclusion of illegal provisions, and not omissions."

*Watkins*, 591 F. App'x. at 135. This failure presents a third independent basis for

dismissal of Plaintiff's TCCWNA claim. *See, e.g. Trexler v. Dodge City, Inc*., 2021

WL 754004, at *6 (D.N.J. Feb. 26, 2021) ("Plaintiffs do not articulate what right has

been violated or what contract violates such right."); *see also Billings v. TD Bank,*

*NA*, 2013 WL 3989572, at *5 (D.N.J. Aug. 1, 2013) (collecting cases where "[t]he

District of New Jersey has consistently dismissed TCCWNA claims that fail to

identify a particular [unlawful] contract provision").

## V.   CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Class Action

Complaint with prejudice.

Dated: December 2, 2022                    Respectfully Submitted

                                          */s/ Lauri A. Mazzuchetti*
James B. Saylor (*pro hac vice*)          Lauri A. Mazzuchetti
Aaron J. Gold                             KELLEY DRYE & WARREN LLP
KELLEY DRYE & WARREN LLP                  One Jefferson Road, 2nd Floor
3 World Trade Center                      Parsippany, NJ 07054
175 Greenwich Street                      Tel: (973) 503-5900
New York, NY 10007                        Fax: (973) 503-5950
Tel: (212) 808-7800                       lmazzuchetti@kelleydrye.com
Fax: (212) 808-7897
jsaylor@kellydrye.com
agold@kelleydrye.com                      *Counsel for Defendants*
                                          *Resideo Technologies, Inc., and*
                                          *Honeywell International Inc.*