## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SALVATORE BADALAMENTI and LISA BADALAMENTI, on behalf of themselves and the Putative Class, | Case No. 2:22-cv-5592-MEF-CLW |
| Plaintiffs, | Hon. Michael E. Farbiarz<br>Magistrate Judge Cathy L. Waldor |
| v. | **Oral Argument Requested** |
| RESIDEO TECHNOLOGIES, INC., and HONEYWELL INTERNATIONAL INC., | |
| Defendants. | |

---

## REPLY MEMORANDUM OF LAW IN
## FURTHER SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

---

James B. Saylor (*pro hac vice*)
Aaron J. Gold
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800
Fax: (212) 808-7897
jsaylor@kellydrye.com
agold@kelleydrye.com

Lauri A. Mazzuchetti
KELLEY DRYE & WARREN LLP
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Tel: (973) 503-5900
Fax: (973) 503-5950
lmazzuchetti@kelleydrye.com

*Counsel for Defendants*
*Resideo Technologies, Inc., and*
*Honeywell International Inc.*

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ...................................................................1

II.   ARGUMENT.............................................................................................1

    A.    Plaintiffs' Misrepresentation Claims Fail Because They Cannot Identify a Misrepresentation About the Vista-20P or Vista-128BPT ...........................................................................................1

        1.    Defendants Did Not Misrepresent the Alarm Systems Nor Dupe UL Into Issuing a "False Certification" ..........................2

        2.    Alleging (Incorrectly) That Compliance with NFPA 72 Is Impossible Does Not Create a Misrepresentation ....................4

        3.    Plaintiffs' Recharacterizing Their Claims As "Omissions" Does Not Cure Their Failure to Allege Falsehoods..................5

    B.    Plaintiffs Still Do Not Allege Any Actual Injury ................................6

    C.    Plaintiffs Fail to Allege Violations of the New Jersey Construction Code, Let Alone a CFA Claim Based on Such Violations ....................................................................................7

    D.    Plaintiffs' CFA and Common Law Fraud Claims Sound in Breach of Warranty, but Fail Under Rule 9(b) ...................................8

    E.    Plaintiffs Confirm That They Seek Purely Economic Losses, Barring their Tort Claims ...............................................................10

    F.    Plaintiffs Do Not State Claims for Breaches of Warranty ................10

        1.    Plaintiffs Did Not Give Pre-Suit Notice .................................10

        2.    Plaintiffs Do Not Identify Any Express Warranties They Relied Upon Before Purchasing the Alarm Units....................10

        3.    Plaintiffs' Fully Functioning Alarm Systems Do Not Breach Any Implied Warranty.................................................11

    G.    Plaintiffs' Derivative Unjust Enrichment Claims Fail......................12

    H.    Plaintiffs Cannot State a TCCWNA Violation ..................................13

    I.    Salvatore's Claim is Time-Barred and Plaintiffs Fail to Plead Facts Sufficient to Invoke Equitable Tolling ....................................15

III.  CONCLUSION.........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arlandson v. Hartz Mountain Corp.*,
    792 F. Supp. 2d 691 (D.N.J. 2011) .......................................................................11

*Baker v. Inter Nat'l. Bank*,
    2012 WL 174956 (D.N.J. Jan. 19, 2012) ..............................................................14

*Bd.-Tech Elec. Co., Ltd. v. Eaton Elec. Holdings, LLC*,
    2017 WL 4990659 (S.D.N.Y. Oct. 31, 2017) .........................................................3

*In re Caterpillar, Inc., C13 & C15 Engine Prods.*,
    2015 WL 4591236 (D.N.J. July 29, 2015) ..............................................................7

*Cohen v. Subaru of Am., Inc.*,
    2022 WL 714795 (D.N.J. Mar. 10, 2022) ...............................................................6

*DeFrank v. Samsung Elecs. Am., Inc.*,
    2020 WL 6269277 (D.N.J. Oct. 26, 2020) ............................................................13

*Dewey v. Volkswagen AG*,
    558 F. Supp. 2d 505 (D.N.J. 2008) .........................................................................9

*Dzielak v. Whirlpool Corp.*,
    2019 WL 6607220 (D.N.J. Dec. 5, 2019) .............................................................11

*Dzielak v. Whirlpool Corp*,
    83 F.4th 244 (3d Cir. 2023) ..........................................................................2, 3, 4

*In re: Elk Cross Timbers Decking Mkt'g*,
    2015 WL 6467730 (D.N.J. Oct. 26, 2015) ............................................................12

*In re Evenflo Co.*,
    707 F. Supp. 3d 103 (D. Mass. 2023) ...................................................................13

*Francis E. Parker Mem. Home, Inc. v. Georgia-Pac. LLC*,
    945 F. Supp. 2d 543 (D.N.J. 2013) .........................................................................8

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007) ....................................................................................8

*Fuqua v. Bristol-Myers Squibb Co.*,
  926 F. Supp. 2d 538 (D.N.J. 2013) .......................................................................15

*Gov't Emps. Ins. Co. v. Ningning He*,
  2019 WL 5558868 (D.N.J. Oct. 29, 2019) ..........................................................13

*Gujral v. BMW of N. Am., LLC*,
  2022 WL 3646627 (D.N.J. Aug. 23, 2022) ..........................................................13

*Int'l Union of Operating Eng'rs Loc. No. 68 Welfare Fund v. Merck & Co.*,
  929 A.2d 1076 (N.J. 2007) ..................................................................................9

*Interprofession du Gruyere v. U.S. Dairy Exp. Council*,
  61 F.4th 407 (4th Cir. 2023) ................................................................................4

*Levari Enters., LLC v. Kenworth Truck Co.*,
  2021 WL 672657 (D.N.J. Feb. 22, 2021) .............................................................10

*McKinney v. Union City Med. Supply, Inc.*,
  2019 WL 3812451 (D.N.J. Aug. 14, 2019) ...........................................................4

*Metcalfe v. Biomet, Inc.*,
  2019 WL 192902 (D.N.J. Jan. 15, 2019) ..............................................................11

*Mladenov v. Wegmans Food Mkts., Inc.*,
  124 F. Supp. 3d 360 (D.N.J. 2015) ......................................................................14

*Neale v. Volvo Cars of N. Am., LLC*,
  2021 WL 3013009 (D.N.J. July 15, 2021) ............................................................7

*Robey v. SPARC Grp. LLC*,
  256 N.J. 541 (2024) ............................................................................................14

*Simner v. LG Elecs. U.S.A., Inc.*,
  2022 WL 3152707 (D.N.J. Aug. 8, 2022) ............................................................10

*SodexoMAGIC, LLC v. Drexel Univ.*,
  24 F.4th 183 (3d Cir. 2022) ..................................................................................5

*Sun Chem. Corp. v. Fike Corp.*,
  235 A.3d 145 (N.J. 2020) ....................................................................................12

*Torsiello v. Strobeck*,
955 F. Supp. 2d 300 (D.N.J. 2013) ........................................................................8

*Viking Yacht Co. v. Composites One LLC*,
496 F. Supp. 2d 462 (D.N.J. 2007) ......................................................................11

*Watkins v. DineEquity, Inc.*,
591 F. App'x 132 (3d Cir. 2014) ..........................................................................14

*Weske v. Samsung Elecs. Am., Inc.*,
2012 WL 833003 (D.N.J. Mar. 12, 2012) ............................................................13

**Statutes**

N.J.S.A. 12A:2–607(3)(a) ...........................................................................................10

N.J.S.A. 56:12-17 .......................................................................................................14

**Other Authorities**

Federal Rule of Civil Procedure 9(b)..................................................................2, 8, 15

# I.    PRELIMINARY STATEMENT[1]

Plaintiffs' Amended Complaint suffers from the same fatal defects that doomed Salvatore's first Complaint.  Its "core theory" remains one of misrepresentation, notwithstanding that Plaintiffs received exactly what was represented: "UL Listed" Alarm Systems.  Plaintiffs' Opposition chases hypotheticals that the Court's prior Order dismissing the original Complaint mentioned in passing, highlighting conclusory and counterfactual new allegations to animate a baseless and implausible narrative of purported knowledge and concealment by Defendants.  But Plaintiffs' allegations are not only conclusory; they are belied by the Amended Complaint and its exhibits.  For this reason, and because of myriad additional, independently sufficient defects in all of Plaintiffs' claims as identified in Defendants' Motion and below, the Court should dismiss Plaintiffs' Amended Complaint with prejudice.

# II.    ARGUMENT

## A.    Plaintiffs' Misrepresentation Claims Fail Because They Cannot Identify a Misrepresentation About the Vista-20P or Vista-128BPT

Plaintiffs' Opposition reconfirms that Plaintiffs' claims for common law fraud, negligent misrepresentation, breach of express warranty, and violation of the CFA (and the derivative claims for violation of TCCWNA) are based on the theory

---

[1] Capitalized terms not otherwise defined herein have the same meaning ascribed to them in Defendants' Motion to Dismiss (ECF 47-1).

that Defendants misrepresented the Alarm Systems as "UL Listed." This Court has already rejected that theory, finding that Plaintiffs' disagreements with UL about the interpretation or application of UL standards is not actionable against a manufacturer that relies on UL to test and certify its products. (ECF No. 35 at 17.) Plaintiffs' various attempts to sidestep this holding and revive their claims fail.

### 1.     Defendants Did Not Misrepresent the Alarm Systems Nor Dupe UL Into Issuing a "False Certification"

Plaintiffs hope to seize on the Court's hypothesis that it might have reached "a different legal conclusion" if Defendants misrepresented the Alarms Systems to UL. (Opp. at 10–11 (quoting ECF No. 35 at 18–19 n. 16 and *Dzielak v. Whirlpool Corp*, 83 F.4th 244, 262 (3d Cir. 2023).) Yet Defendants did not lie to UL hoping for "a mistake squeaking through," thereby securing "a false-positive certification." (ECF No. 35 at 19 n.17.) There was no mistake by UL: UL explicitly rejected the alleged defect and criticism of UL's certification practices. (*See* Am. Compl., Ex. J at 81–82.) Even if Plaintiffs' pleading did not directly contradict their attempt to shoehorn their case into this hypothetical, its allegations fail to satisfy Rule 9(b). (*See* Mot. at 13–16.) Plaintiffs' Opposition does not save their ill-pled story from dismissal; the supposed "substantive allegations" Plaintiffs highlight are nothing but legal conclusions, allegations contradicted by the record, and conclusory statements. (*See* Opp. at 11–12 (citing Am. Compl. ¶¶ 9, 15, 62, 80–87, 88–95, 96–100).)

No one disputes that UL must certify the Alarm Systems, but stating that

Defendants "were required to verify that their equipment was conforming," before submitting to UL testing is an unsupported legal conclusion. (Am. Compl. ¶¶ 9, 62.) UL is the "sole arbiter" of whether a product meets its standards. *Bd.-Tech Elec. Co., Ltd. v. Eaton Elec. Holdings, LLC*, 2017 WL 4990659, at *6 (S.D.N.Y. Oct. 31, 2017). All agree that Defendants represented the Alarm Systems as UL Listed— because they are. (Am. Compl. at Ex. J at 11, 81–82.) And Defendants never "represent[ed]" that the Alarm Systems "meet[] . . . NFPA 72 standards," (*id.*) as this Court has already recognized (ECF No. 35 at 20 n.17). Plaintiffs' speculation regarding "pretests" that "would have" revealed the alleged defect are no more than "should have known" allegations this Court already rejected. (ECF No. 35 at 21.)

Plaintiffs' reliance on *Dzielak*, 83 F.4th 244, misunderstands both the facts in this case and the court's decision in *Dzielak*, which is easily distinguishable. (Opp. at 10–11). *Dzielak* explored a different hypothetical concerning certification marks: a situation where the certifying authority *relied on self-testing by the submitting party*. 83 F.4th at 262 n. 23. The court merely noted that where—unlike in this case—"an owner of a certification mark relies on the user for information about a product, such as through self-testing, the user's liability for the erroneous use of the mark becomes a more difficult question." *Id.*

But the Third Circuit explicitly *did not* endorse some general "fraud exception" as Plaintiffs suggest. Just the opposite, it affirms the rationale that

- 3 -

products bearing a certification mark "communicate nothing more than 'that the goods have been certified as meeting the standards set forth by the certifier.'" *Id.* at 262 (quoting *Interprofession du Gruyere v. U.S. Dairy Exp. Council*, 61 F.4th 407, 415–16 (4th Cir. 2023) (internal quotation marks omitted)); *see also id.* at 262 (suggesting that parties "aggrieved by an improper certification of a product could seek redress from the mark's owner—as opposed to the user of the mark").

Plaintiffs' suggestion that this Court should credit their conclusory pretesting allegations because Defendants have not "simply disclos[ed] the pre-testing results showing compliance" is disingenuous. (Opp. at 12.) *First*, this is a motion to dismiss; Defendants (and the Court) can only rely upon the allegations in the Complaint, its attachments, and documents incorporated by reference. *See McKinney v. Union City Med. Supply, Inc.*, 2019 WL 3812451, at *2 (D.N.J. Aug. 14, 2019). *Second*, Plaintiffs' insinuation is senseless because UL *has confirmed* that the Alarm Systems meet UL standards, both when initially tested *and* when UL rejected Plaintiffs' alleged defect theory. (Mot. at 14; Am. Compl. Ex. J at 81–82.)

## 2. Alleging (Incorrectly) That Compliance with NFPA 72 Is Impossible Does Not Create a Misrepresentation

Plaintiffs' tweaked allegations concerning NFPA 72 compliance fare no better. (*See* Opp. at 15.) The Alarm Systems' installation guides are instructions, *not affirmative representations*; they advise buyers to install alarms "in accordance with . . . [NFPA] Standard 72." (Am. Compl. ¶¶ 23, 33.) This Court already

- 4 -

explained that such directions "*say[ ] nothing*" regarding "*the quality of the Alarm.*" (ECF No. 20 n.17 (collecting cases) (emphasis added).)  That ends the matter.

Plaintiffs misrepresent caselaw in an attempt to convert these instructions into misrepresentations based on the supposed "impossibility" of compliance.  (Opp. at 16 (citing *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183 (3d Cir. 2022).) *SodexoMAGIC* says nothing about instructions to consumers and instead explains that "false projections" of future events, known to be false when made, could qualify as "a misrepresentation of an existing fact."  24 F.4th at 211.  Plaintiffs are also wrong on the facts, which they themselves concede.  *First*, Plaintiffs admit that (i) UL standards "subsume[]" NFPA 72 requirements, (ii) UL executes the "actual implementation and testing" of both UL and NFPA standards, and (iii) the Alarm Systems were submitted to UL for testing.  (Am. Compl. Ex. J. at 11.)  UL certified the Alarm Systems as meeting its own standards and did not reject the Alarm Systems for "failing" NFPA 72 standards.  *Second*, Plaintiffs also argue that compliance is not "impossible" if homeowners use Plaintiffs' expert's patented "fix."  (Am. Compl. ¶¶ 96–100.)  The instruction to install the Alarm Systems in accordance with NFPA 72 cannot form the basis of a misrepresentation claim.

### 3.    Plaintiffs' Recharacterizing Their Claims As "Omissions" Does Not Cure Their Failure to Allege Falsehoods

Despite Plaintiffs' pivot to allegations of supposed "omissions," (*see* Opp. at 13–17), they admit that the "core of [their] claims are based in contract and

- 5 -

representation and deceptive-based harms." (*Id.* at 30.)

But even if a material "omission" was at issue, Plaintiffs still state no claim. As Defendants explained, fraud by omission requires a *duty to disclose information*. (Mot. at 19–20.) That includes CFA violations, too. Such claims may not demand formal privity or a contract between the parties (*see* Opp. at 17), but New Jersey law still "requires a duty to disclose for omission-based claims under the NJCFA." *Cohen v. Subaru of Am., Inc.*, 2022 WL 714795, at *24 (D.N.J. Mar. 10, 2022). Plaintiffs do not allege any such obligation and they cannot impose one by calling Defendants' true statements about UL and NFPA "partial disclosures." (Opp. at 17–18.) There is nothing "ambiguous" about Defendants' limited representations on those topics—the Alarm Systems are, as Plaintiffs concede, UL Listed.

## B.    Plaintiffs Still Do Not Allege Any Actual Injury

Each of Plaintiffs' claims also fail because the Amended Complaint does not plausibly allege damages or an "ascertainable loss." (*See* Mot. at 20–23.) The damages identified in Plaintiffs' Opposition remain insufficient. (Opp. at 19–21.)

Plaintiffs' conclusory allegations that the Alarm Systems were essentially worthless (or worth less than paid for) are not plausible. Calling a product worthless does not make it so; Plaintiffs admit that their Alarm Systems are currently operational, have never malfunctioned, nor caused them any actual harm. (*See*, *e.g.*, Am. Compl. ¶¶ 20–29, 30–39.) Plaintiffs do not allege what they paid, how they

would account for the value they have obtained, or any other reasonable means of quantifying their alleged overpayment.  On this basis, Plaintiffs' claims must be dismissed.  (*See* Mot. at 22 (citing, *e.g.*, *In re Caterpillar, Inc., C13 & C15 Engine Prods.*, 2015 WL 4591236, at *38 (D.N.J. July 29, 2015).)

Nor have Plaintiffs plausibly alleged that they have incurred any costs to repair their alarms (which, again, they concede are operational).  Fictitious "repair costs" to remedy the defect identified by Mr. Zwirn—a defect that Plaintiffs concede has never materialized in any Alarm System—is a "hypothetical or illusory" cost that is insufficient as a matter of law.  *Neale v. Volvo Cars of N. Am., LLC*, 2021 WL 3013009, at *11 (D.N.J. July 15, 2021).  Despite Plaintiffs' apparent belief that the Alarm Systems installed in their homes present a safety risk, Plaintiffs do not allege that they have installed Mr. Zwirn's purported "fix."

Plaintiffs' allegations concerning a "replacement" product fare no better. Indeed, Plaintiffs have alleged that the supposed defect is present in every combination-listed burglar and fire alarm system in the United States, dating back decades, thereby making replacement impossible.

### C.    Plaintiffs Fail to Allege Violations of the New Jersey Construction Code, Let Alone A CFA Claim Based on Such Violations

Plaintiffs' use of the New Jersey "International Residential Code" IRC/2015 as a predicate for their CFA claim does not save that claim from dismissal.

*First*, Plaintiffs cannot plausibly allege "that [the] Alarm Systems do not

- 7 -

comply with NFPA 72" (Opp. at 22); although they repeat that legal conclusion, UL proves it untrue because UL certified both Alarm Systems and NFPA 72 is "subsumed within UL standards." (Am. Compl. Ex. J at 11–12, 24–25.) Even if the Alarm Systems did not meet NFPA 72, that alone still does not violate any portion of New Jersey's construction code, including because the construction code *does not apply* to Defendants. (*See* Mot. at 23–24.)

*Second*, even if a technical violation of the construction code could be alleged, the result is the same. As this Court noted (ECF No. 35 at 21 n.18), and as Plaintiffs concede, "a violation of the Construction Code in and of itself" does not create a CFA claim. (Opp. at 22 (quoting *Francis E. Parker Mem. Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 564 (D.N.J. 2013)). There must be "unconscionable commercial conduct" which entails showing "substantial aggravating circumstances" of bad faith and preying upon consumers. *Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 309 n.5 (D.N.J. 2013). Plaintiffs allege none.

### D. Plaintiffs' CFA and Common Law Fraud Claims Sound in Breach of Warranty, but Fail Under Rule 9(b)

Plaintiffs concede that their CFA, common law fraud, and negligent misrepresentation claims must meet Rule 9(b)'s heightened standard. (Opp. at 14–15.) Plaintiffs were therefore required to plead the who, what, when, where and how of the alleged fraud with particularity. *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). They do not. For the reasons already discussed, Plaintiffs do not

allege that Defendants acted with requisite scienter.  (*See supra* § II.A; Mot. at 13–16.)  Nor have Plaintiffs alleged cognizable loss.  (*See supra* § II.B; Mot. 20–23.)

Their misrepresentation claims also fail because Plaintiffs do not even attempt to draw a "causal nexus," never mind affirmative reliance, between alleged misrepresentations and their purchases.  (*See* Opp. at 17.)  Plaintiffs never specify what pre-purchase representation *they saw* before buying their alarms, what the statement specifically represented, who made the statement, or when, where, or what form they took.  *See Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 526–27 (D.N.J. 2008) (dismissing fraud claims—irrespective of any potential misrepresentations—because plaintiffs failed to allege that they ever relied on the representations).  The Amended Complaint cites only (truthful) representations on materials Plaintiffs received post-purchase—schematics, installation guides, and product sheets.

Plaintiffs' reliance on *Int'l Union of Operating Eng'rs Loc. No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076 (N.J. 2007) is misplaced.  (*See* Opp. at 17.) That case expressly "rejected" a "fraud on the market" theory to satisfy the "causal nexus" required for CFA claims.  *Merck*, 929 A.2d at 1088.  Even if "reliance" is not strictly a factor in CFA claims, there must be *some connection* linking plaintiffs' own purchases to the challenged representations.  *See id.*  Plaintiffs do not do so.

Finally, Plaintiffs' CFA also claim fails because it is simply an alleged breach of warranty claim repackaged as alleged fraud.  Plaintiffs' conclusory arguments of

- 9 -

"fraud" and "intent to conceal" (Opp. at 24) do not create "substantial aggravating circumstances" justifying a CFA claim. *See Levari Enters., LLC v. Kenworth Truck Co.*, 2021 WL 672657, at *8 (D.N.J. Feb. 22, 2021).

### E. Plaintiffs Confirm That They Seek Purely Economic Losses, Barring their Tort Claims

Even though Plaintiffs confirm that they seek purely economic damages, they nonetheless assert that the economic loss doctrine "does not apply . . . when a party uses misrepresentations to induce another into entering an agreement." (Opp. at 24–25.) But because Plaintiffs' misrepresentation claims each fail, the economic loss rule applies and bars their tort claims.

### F. Plaintiffs Do Not State Claims for Breaches of Warranty

#### 1. Plaintiffs Did Not Give Pre-Suit Notice

Despite Plaintiffs' arguments to the contrary (Opp. at 25–26) "statutory notice is a condition precedent to filing any suit for breach of warranty." *Simner v. LG Elecs. U.S.A., Inc.*, 2022 WL 3152707, at *8 (D.N.J. Aug. 8, 2022). New Jersey law explicitly states the buyer "must" give notice or "be barred from any remedy." N.J.S.A. 12A:2–607(3)(a). Plaintiffs do not deny that they failed to provide pre-suit notice, and their warranty claims are subject to dismissal for this reason alone.

#### 2. Plaintiffs Do Not Identify Any Express Warranties They Relied Upon Before Purchasing the Alarm Units

In addition to their failure to allege a warranty that was breached—because the Alarm Systems were UL Listed as represented—Plaintiffs were required to

allege where they "read, heard, saw or knew of the advertisement containing the affirmation of fact or promise." *Metcalfe v. Biomet, Inc.*, 2019 WL 192902, at *3 (D.N.J. Jan. 15, 2019). Their failure to do so requires dismissal.

Plaintiffs argue that reliance on an express warranty can be "presumed" in certain circumstances but rely on cases where the alleged representations were found in places where a consumer might reasonably be presumed to have seen them before a purchase. (Opp. at 33–34 (citing *Dzielak v. Whirlpool Corp.*, 2019 WL 6607220, at *14 (D.N.J. Dec. 5, 2019) (product branding on exterior of product); *Viking Yacht Co. v. Composites One LLC*, 496 F. Supp. 2d 462, 470 (D.N.J. 2007) (product bulletin provided to induce purchase)).) Here, Plaintiffs rely on the "warranty" that the Alarm Systems were UL Listed, on materials that they received *post-purchase*— schematics, installation guides, and product sheets.

### 3. Plaintiffs' Fully Functioning Alarm Systems Do Not Breach Any Implied Warranty

Plaintiffs' claims for breach of the implied warranty of merchantability fail because the Alarm Systems were "merchantable" when purchased. Plaintiffs concede that their alarms are currently operational, years after installation, and do not allege they have malfunctioned or failed to provide alarm functions in any way. A merchantable product is not perfect; it is only fit for its "ordinary purpose." *See Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 706 (D.N.J. 2011). Plaintiffs' arguments concerning the hypothesized defect that has never materialized

(Opp. at 35–36) are unavailing.  The Alarm Systems are fit for, and have fulfilled, their "ordinary purpose" of alarm monitoring.

Plaintiffs' implied warranty claims are also subsumed by the New Jersey Products Liability Act ("NJPLA").  The NJPLA is the "sole basis of relief" for all claims "based upon a product's manufacturing, warning, or design defect."  *Sun Chem. Corp. v. Fike Corp.*, 235 A.3d 145, 156 (N.J. 2020).  Here, Plaintiffs' implied warranty claim asserts that a manufacturing or design defect renders their Alarm Systems non-merchantable and is thus subsumed by the NJPLA.

### G.    Plaintiffs' Derivative Unjust Enrichment Claims Fail

Plaintiffs' Opposition does not save their unjust enrichment claims.  Plaintiffs' unjust enrichment claims fail because they are based on, and are wholly duplicative of, their claims for "breaches of warranty, misrepresentations and fraud," (*see* Am. Compl. ¶ 157), which themselves fail.  (*See supra* §§ A, B, D, F).

Pleading unjust enrichment in the "alternative" requires "explain[ing] how the claim is truly 'alternative.'"  *In re: Elk Cross Timbers Decking Mkt'g*, 2015 WL 6467730, at *35 (D.N.J. Oct. 26, 2015) (rejecting unjust enrichment without "allegations providing some basis for" alternative treatment).  Plaintiffs do not dispute that their primary (albeit meritless) claims could provide adequate relief.  (*See* Opp. at 30–32.)  Plaintiffs' reliance on decisions regarding the laws of states other than New Jersey does not alter this analysis.  *See Gujral v. BMW of N. Am.*,

- 12 -

*LLC*, 2022 WL 3646627, at *6 (D.N.J. Aug. 23, 2022) (finding that unjust enrichment may be pled in the alternative under Connecticut and North Carolina law, not New Jersey law).

Plaintiffs also cannot state a claim because they, as indirect purchasers, "cannot succeed on a claim for unjust enrichment." *Weske v. Samsung Elecs. Am., Inc.*, 2012 WL 833003, at *7 (D.N.J. Mar. 12, 2012). Plaintiffs cite outliers deviating from that general rule, (*see* Opp. at 30–32), because most courts "have interpreted New Jersey law to preclude unjust enrichment claims by consumers against manufacturers for products purchased from an intermediary." *In re Evenflo Co.*, 707 F. Supp. 3d 103, 138 (D. Mass. 2023) (explaining "the majority view").

In any event, those cases straying from the majority did so when facing cognizable allegations of fraud (of which there are none here, *see supra* § D) or in other limited circumstances not present here. *See, e.g.*, *DeFrank v. Samsung Elecs. Am., Inc.*, 2020 WL 6269277, at *25 (D.N.J. Oct. 26, 2020). Plaintiffs have not plausibly alleged "circumstances that would make it unjust" for Defendants to retain whatever benefit Plaintiffs allegedly conferred upon them. *See Gov't Emps. Ins. Co. v. Ningning He*, 2019 WL 5558868, at *6 (D.N.J. Oct. 29, 2019). Again, Defendants provided exactly what was represented: Alarm Systems that were UL Listed.

## H.    Plaintiffs Cannot State a TCCWNA Violation

Plaintiffs' TCCWNA claim also fails. To survive dismissal, Plaintiffs must

- 13 -

allege: (1) they are "aggrieved" consumers, and (2) Defendants are "sellers" who (3) offered a consumer contract or gave or displayed some written notice or sign, that (4) violated Plaintiffs' "clearly established" legal rights. *See* N.J.S.A. 56:12-17; *Robey v. SPARC Grp. LLC,* 256 N.J. 541, 564 (2024). Plaintiffs do not do so.

*First*, Plaintiffs' failure to allege a cognizable harm (*see supra* § B) means they are not "aggrieved" consumers under TCCWNA because they have not suffered any "adverse consequences"; conclusory allegations they were "aggrieved" have no effect. *Robey*, 256 N.J. at 56; (*see* Am. Compl. ¶¶ 29, 39.) *Second*, Defendants are not "sellers," because Defendants did not sell the Alarm Systems to Plaintiffs. *Baker v. Inter Nat'l. Bank*, 2012 WL 174956, at *9 (D.N.J. Jan. 19, 2012) (TCCWNA applies only "to . . . purchase[s] of personal products or services directly from the seller"). *Third*, Plaintiffs' TCCWNA claim fails along with their CFA claim. (*See supra* §§ A–D); *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 380 (D.N.J. 2015) ("TCCWNA claims cannot survive" if plaintiffs "fail[] to state viable CFA claims"). After all, the TCCWNA "does not establish consumer rights or seller responsibilities," but only "bolsters rights and responsibilities established by other laws." *Watkins v. DineEquity, Inc.*, 591 F. App'x 132, 134–35 (3d Cir. 2014). *Fourth*, Plaintiffs do not (and cannot) identify an "illegal term or warranty"; truthful statements about UL listing (which Plaintiffs concede are accurate) are not "illegal."

## I.    Salvatore's Claim is Time-Barred and Plaintiffs Fail to Plead Facts Sufficient to Invoke Equitable Tolling

Finally, Salvatore's claims are long time-barred—which Plaintiffs concede—and his conclusory pleas for equitable tolling fail.  (*See* Mot. at 38–40.)  Equitable tolling is "used sparingly," and the facts supporting it—which must satisfy Rule 9(b)—cannot be "pled in a generalized manner."  *Fuqua v. Bristol-Myers Squibb Co.*, 926 F. Supp. 2d 538, 550 (D.N.J. 2013).

The Opposition confirms that Plaintiffs allegations do not warrant tolling the statute of limitations for Salvatore's claims.  Equitable tolling turns on both Defendants' and Salvatore's conduct.  Along with plausible allegations of fraudulent concealment by Defendants (which Plaintiffs do not plead), Plaintiffs must show that Salvatore did not discover the alleged defect despite the "exercise of due care."  *Fuqua*, 926 F. Supp. 2d at 549.  For this, Plaintiffs can only identify the conclusory allegation that Salvatore learned of the alleged defect in August 2022.  (Opp. at 36; Am. Compl. ¶¶ 28–29.)  This is plainly insufficient.  Nor does he offer any response to Defendants' argument that he (or the professional that installed his Alarm System) should have discovered the purported "defect" during installation.  (Mot. at 39–40.)

## III.    CONCLUSION

For all these reasons, the Court should dismiss Plaintiffs' Amended Complaint with prejudice.

Dated: April 23, 2025

Respectfully Submitted

/s/ *Lauri A. Mazzuchetti*

James B. Saylor (*pro hac vice*)
Aaron J. Gold
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800
Fax: (212) 808-7897
jsaylor@kellydrye.com
agold@kellydrye.com

Lauri A. Mazzuchetti
KELLEY DRYE & WARREN LLP
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Tel: (973) 503-5900
Fax: (973) 503-5950
lmazzuchetti@kelleydrye.com

*Counsel for Defendants*
*Resideo Technologies, Inc., and*
*Honeywell International Inc.*