**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SALVATORE and LISA BADALAMENTI, on behalf of themselves and the Putative Class, *Plaintiffs*, v. RESIDEO TECHNOLOGIES, INC. and HONEYWELL INTERNATIONAL INC., *Defendants*. | No. 22-cv-05592 (MEF)(CF) **OPINION and ORDER** |

\* \* \*

For the purposes of this Opinion and Order, the Court largely assumes familiarity with the facts and procedural history of this case.

\* \* \*

Some background:

The Plaintiff[1] filed a products-liability complaint. See Class Action Complaint and Jury Demand (ECF 1) ("First Complaint"). Motion practice followed, and the complaint was dismissed in part during November of 2024. See Badalamenti v. Resideo Techs., Inc., 755 F. Supp. 3d 534, 549 (D.N.J. 2024).

Around a month later, the Court issued this order:

> In light of the Court's discussion with the parties during the . . . conference, and Plaintiff having advised that he wishes to replead certain claims, and in the interest of efficiency for both the parties and the Court, Plaintiff may file an amended complaint --- which includes ALL facts

---

[1]  Salvatore Badalamenti.

> and claims he seeks to allege in this action, and is guided by the . . . Opinion and Order.

December 11, 2024 Order (ECF 41) ("December 2024 Order").

A month after that, in January of 2025, the Plaintiff (now joined by a relative[2]) filed an amended products-liability complaint. See Amended Class Action Complaint and Jury Demand (ECF 44) ("Second Complaint").

There was another round of motion practice, and the Court then dismissed the second complaint. See Badalamenti v. Resideo Techs., Inc., 2025 WL 3013023, at *25 (D.N.J. Oct. 28, 2025).

\*   \*   \*

Under Federal Rule of Civil Procedure 15(a), the Plaintiffs now ask to file a third complaint. See Plaintiffs' Letter (ECF 59); Plaintiffs' Brief in Response to the Court's Text Order of November 6, 2025 ("Plaintiffs' Brief") (ECF 61) at 1.[3]

The basis for the request: the Plaintiffs want to add in new allegations based on a particular 34-page spreadsheet. See Plaintiffs' Brief, Exhibit 1 (ECF 61-1) at 69-102; Plaintiffs' Brief, Exhibit 2 (ECF 61-2) ¶¶ 86-96, 104-13, 117, 121-23, 149, 156.

The Plaintiffs' Rule 15 request is opposed by the Defendants. See Memorandum of Law in Support of Defendants' Opposition [to] Plaintiffs' Motion to Amend ("Defendants' Opposition") (ECF 66) at 1.

The Court will deny it.

\*   \*   \*

The core problem with the Plaintiffs' request is that they had the 34-page spreadsheet in June 2023 --- and that was long before January 2025, when they filed their previous complaint, the now-dismissed second one. See id. at 1-2, 15; see also

---

[2] Lisa Badalamenti.

[3] There is no practical difference between the two open questions here: (i) whether the Court's October 2025 dismissal of the second complaint was with prejudice and (ii) whether the Plaintiffs should be allowed to again replead. See Badalamenti, 2025 WL 3013023, at *25 n.41 (leaving these questions open).

Plaintiffs' Reply Brief in Further Support of Plaintiffs' Motion for Leave to Amend ("Plaintiffs' Reply") (ECF 67) at 13-14.

The Plaintiffs did not review the spreadsheet before filing complaint-number-two, and so they did not do <u>before</u> what they want to do <u>now</u> --- use the spreadsheet to build out the allegations in their pleadings.

In this case, that cannot be justified, and the Plaintiffs' request to file a third compliant will be denied.

\*   \*   \*

Start the analysis by walking through five case-specific reasons why the Plaintiffs (i) should have <u>reviewed</u> the spreadsheet before filing the second complaint and, at that point, (ii) should have <u>used</u> the spreadsheet, to flesh out their allegations.[4]

The <u>first</u> of the five reasons is timing.

The Plaintiffs did not put hands on the spreadsheet just under the wire.  Say the night or the week before they were teeing up the second complaint for filing.  Rather, they had the spreadsheet for a long time --- for around 18 months before they filed their second complaint.  <u>See</u> Plaintiffs' Reply at 3.

The <u>second</u> reason is context.

The document was not buried.  There was no haystack: the spreadsheet was part of a modest-sized production --- of 1241 pages.  <u>See</u> Defendants' Opposition, Exhibit 1 (ECF 66-2).  And the spreadsheet was no hard-to-find needle.  The relevant cover letter made things easy.  It specifically identified the spreadsheet by name and bates number.  <u>See id</u>.

<u>Third</u>, source.

The 34-page spreadsheet was produced to the Plaintiffs by Underwriters Laboratories.  <u>See id</u>.; <u>see also</u> Plaintiffs' Reply at 13.  And the Plaintiffs' legal theory here depends at its core on allegations about interactions between the Defendants and UL.  <u>See</u> First Complaint ¶¶ 8, 11-14, 22-24, 42, 48-58, 72-

---

[4]  As a matter of their professional responsibilities, the Plaintiffs' lawyers may also have had a general, background duty to review and use the spreadsheet before the second complaint was filed.

73, 95, 100, 106; Second Complaint ¶¶ 9-10, 12-13, 15-16, 22, 25-29, 35-39, 55, 57, 61-71, 76, 80-95, 106-07, 124, 131, 136, 142; Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint (ECF 14) at 1, 3-5, 7-12; Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (ECF 50) at 1-2, 5-7, 9-13, 16, 18-19.

Given that backdrop, what UL handed over was all but surely to be at the heart of the case. Something to dig into. Not something to put aside, to be reviewed only later and only as a fallback --- if the second complaint were eventually dismissed.

<u>Fourth</u>, the Court's order.

After its in-part dismissal of the first complaint, the Court ordered that "ALL facts and claims" that were to be pressed "in t[he] action" needed to be in the second complaint. <u>See</u> December 2024 Order.

The order set up a fork in the road, and marked it out in bright lights. Down one path: work through the on-hand discovery and use it in the second complaint. Or go the other route: opt not to review the information that has come in, and run the risk that "facts and claims," <u>id</u>., associated with ignored discovery (like the spreadsheet) will not be able to become part of the pleadings.

The Plaintiffs chose the second approach. In doing so, they "relied at their peril on the possibility of adding to their complaint." <u>In re Adams Golf, Inc. Sec. Litig.</u>, 381 F.3d 267, 280-81 (3d Cir. 2004) (denying leave to amend, in part on this basis).

<u>Fifth</u>, content.

The spreadsheet is relatively short. For anyone with a strong feel for the allegations here, the document all but speaks for itself.

And the Plaintiffs suggest nothing that is meaningfully to the contrary.

They do not contend, for example, that understanding the spreadsheet required a new sift through the overall discovery. Or that teasing out the spreadsheet's meaning depended on next steps that needed taking, like getting new document subpoenas out the door or identifying and interviewing new witnesses. The

4

spreadsheet was not a loose end that had to be chased down before its import could become clear; rather, in the context of the Plaintiffs' broader allegations, it was mainly self-explanatory.

And the Plaintiffs do not argue that there was something about the spreadsheet's meaning that only became obvious later, in retrospect.

Per the Plaintiffs, the spreadsheet's asserted utility is that it helps to supply "the foundational 'false statement' that the Court noted was missing from [the] Plaintiffs' original pleading." See Plaintiffs' Brief at 11. On that understanding, the spreadsheet could help to plug a hole spotlighted by the Court in its ruling on the first complaint, not in its decision on the second complaint. See Badalamenti, 755 F. Supp. 3d at 547 n.16.

Bottom line: beyond any background professional responsibilities the Plaintiffs' lawyers may have had,[5] there were added reasons why the spreadsheet should have been reviewed and used before the second complaint was filed. It should have been reviewed given when it was received, the context of its production, the entity it came from, and the Court's December 2024 order. And the spreadsheet should have been used given its content; it made sense enough on its own, without any real need to first reel in more information.

*   *   *

Against the conclusion set out just above, the Plaintiffs do not offer a hard push-back.

Indeed, they concede that they simply did not review the spreadsheet when it came in. See Plaintiffs' Reply at 14 ("With discovery stayed and [the] Defendant's dispositive motion pending, a complete review of the . . . documents was not necessary given the posture of the case.").

But that does not work.

If the purpose of getting discovery were simply to lay down stepping-stones to getting more discovery --- then maybe it would make sense not to review documents that have come in while

---

[5] See footnote 4.

5

discovery is on pause. After all, at that point, there is no open path to obtaining more materials.

But discovery is undertaken for many reasons. One is so that plaintiffs can flesh out the allegations in their pleadings. So why not do a complete read-through of the discovery in advance of filing a new pleading, whether discovery is stayed at that point or not?

\* \* \*

In short: the spreadsheet was received in June 2023; the second complaint was filed in January 2025; and the Plaintiffs should have, years ago, reviewed and used the 34-page spreadsheet if they wanted to press allegations based on it.

The implication of this:

Because they did not put forward the spreadsheet-based allegations before (when they filed their second complaint), the Court will not allow them to do so now (via a proposed third complaint).

\* \* \*

Relatively free repleading is built into the DNA of federal civil litigation. See Fed. R. Civ. P. 15(a)(2); see also Garrett v. Wexford Health, 938 F.3d 69, 89 (3d Cir. 2019); Mullin v. Balicki, 875 F.3d 140, 150 n.21 (3d Cir. 2017).

But there are outer limits in our law, too. See, e.g., Spartan Concrete Prods., LLC v. Argos USVI, Corp., 929 F.3d 107, 115 (3d Cir. 2019).[6]

The Court has discretion in this area. See Garrett, 938 F.3d at 89; see also Cresci v. City of Bayonne, 2024 WL 94099, at \*2 (3d Cir. Jan. 9, 2024).

And here, it will use that discretion to deny leave to amend.

---

[6] If there were not, defendants could be unfairly pressured, by being subjected to the uncertainties and cascading costs of open cases. Plaintiffs would not feel compelled to put their best foot forward the first time (or the second). And if complaints could be amended too freely, then too much of the court's time could be chewed through --- to the detriment of the court's obligations to the other parties who have cases before it. Time spent here cannot be spent there.

To see why, look to the various factors laid out by the Supreme Court in Foman v. Davis, 371 U.S. 178 (1962).

The one that looms especially large in this case: undue delay. See id. at 182.

"The concept of 'undue delay' includes consideration of whether new information came to light or was available earlier to the moving party." In re Adams Golf, Inc. Sec. Litig., 381 F.3d at 280.

> The "undue delay" factor recognizes that a gap between when amendment becomes possible and when it is actually sought can, in certain circumstances, be grounds to deny leave to amend. While simple delay cannot justify denying leave to amend by itself, delay that is "undue" --- a delay that is protracted and unjustified --- can place a burden on the court or counterparty . . . [T]he question of undue delay requires that we focus on the movant's reasons for not amending sooner while bearing in mind the liberal pleading philosophy of the federal rules. Following this principle, we have refused to overturn denials of motions for leave to amend where the moving party offered no cogent reason for the delay in seeking the amendment.

Mullin, 875 F.3d at 151 (cleaned up); see also CMR D.N. Corp. v. City of Philadelphia, 703 F.3d 612, 635 (3d Cir. 2013) (no abuse of discretion in denying leave to amend where the plaintiff did not "offer[] any cogent explanation for th[e] delay").

In this case, no "cogent" reason has been offered up.

It is one thing to not review discovery because of a mistake, like a clerical error. See Mullin, 875 F.3d at 154-56. But that is not this case. Here, there was apparently an affirmative choice made to not review the spreadsheet. See Plaintiffs' Reply at 13-14 (explaining this).

Moreover, there was no "attempt[] to correct," Mullin, 875 F.3d at 154, the decision to not review the discovery --- by, say, (i) filing an amended complaint just after the press of responding to the first motion to dismiss had passed and there was time to look through the old discovery, cf. Defendants' Opposition at 15-16, or (ii) simply adding allegations based on the spreadsheet into the second complaint, when it was filed in January 2025.

7

And finally, "length of the delay," Mullin, 875 F.3d at 154, can potentially[7] be part of the analysis, and it weighs against allowing for the filing of a third complaint. Amendment is now being sought around 29 months after the spreadsheet was first received. See Defendants' Opposition at 1-2.

"[L]eave to amend has been denied when the moving party knew about facts on which the proposed amendment was based but omitted the necessary allegations from the original pleading." 6 Wright & Miller's Federal Practice & Procedure § 1488 (3d ed. 2025); see also Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006) ("When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied.").

And that is in essence what happened here. Strictly speaking, the Plaintiffs did not know certain facts. But that is only because they chose not to find out what was in the discovery they had obtained.

In short: there is plainly "undue delay" here --- and that would, on its own, supply reason enough to deny the Rule 15 motion. See Heyl & Patterson Int'l, Inc. v. F. D. Rich Hous. of V.I., Inc., 663 F.2d 419, 425 (3d Cir. 1981) ("In the absence of substantial or undue prejudice, denial must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment."); Est. of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 803 (3d Cir. 2010) (noting that where a plaintiff "has had previous opportunities to amend," delay may be undue "[i]rrespective of whether [another party] would have suffered prejudice" from the delay).

\*   \*   \*

Beyond undue delay, prejudice to the Defendants is also relevant in this case. See generally Mullin, 875 F.3d at 155-57.

For one thing, "a significant, unjustified, or 'undue' delay in seeking the amendment may itself constitute prejudice sufficient

---

[7] If delay is especially short it can sometimes excuse a passive failure, like neglect. See Mullin, 875 F.3d at 154-55. But it is less clear under the cases whether the fact that there was only a short delay period can excuse an affirmative choice, like the decision here not to review discovery.

to justify denial of a motion for leave to amend." CMR, 703 F.3d at 629.

And moreover, note that the Plaintiffs contend that allegations based on the 34-page spreadsheet would push their overall claims over the "plausible" line, such that if they are allowed to now file a third complaint they will prevail on any motion to dismiss from the Defendants. See Plaintiffs' Brief at 7-16.

But if that is right,[8] then (i) the Plaintiffs' not including the spreadsheet allegations in their second complaint, paired with (ii) the Court now granting the Plaintiffs' current request and allowing a third complaint --- that would add up to a real waste of the Defendants' resources.

Why? Because if the Plaintiffs had used the spreadsheet in their January 2025 second complaint, then that complaint would have stood up,[9] such that a motion to dismiss directed at that second complaint would have failed. So only two motions to dismiss would need to have been briefed in this case by the Defendants, not three.

To say it in a different way:

Per the Plaintiffs, the spreadsheet allegations would get their claims over the line. So if they had included them in the second complaint, the Defendants would have had to file two motions to dismiss; the second one would have been a loser. But because the Plaintiffs did not include the spreadsheet allegations in the second complaint, the spreadsheet allegations can now end up only in a third complaint. And if the Court were to let the Plaintiffs file a third complaint, the Defendants would have been required to press three motions to dismiss.

\* \* \*

Pivot now from prejudice to the Defendants to the impact on "judicial economy" --- an independent concern in this area. See Mullin, 875 F.3d at 157-58.

---

[8] If it is not, the current Rule 15 motion seeking leave to amend can be denied on another ground --- because the amendment would be futile. See Defendants' Opposition at 17-21.

[9] Again, this is on the Plaintiffs' supposition that the allegations contained in the spreadsheet are enough to clear the "plausible" bar. Cf. footnote 8.

9

Judicial resolution of three motions to dismiss would be a course necessitated by the Plaintiffs' decision not to review the discovery, for the reasons set out in the previous section. That is more work than resolving two motions to dismiss. It pulls away from time that can be spent on other cases, and therefore undermines judicial economy.

\*   \*   \*

In a nutshell: the Plaintiffs should have timely reviewed and used the materials they had worked to get --- certainly before the filing of the second complaint.[10] Their decision not to review and use the spreadsheet amounted to undue delay. And it caused the Defendants prejudice, and the Court to waste time.

The Rule 15 motion to file a new complaint will be denied.[11]

\*   \*   \*

The caselaw confirms this result.

Look first to Lorenz v. CSX Corp., 1 F.3d 1406 (3d Cir. 1993) --- in which the court of appeals affirmed a district court's denial of leave to file a fourth complaint where, among other things, "[m]ost of the facts were available to [the] plaintiff . . . before she filed her original complaint in 1986, and probably all of them were available when she amended her complaint in May and August of 1987." Id. at 1414.

Or take Jang v. Boston Scientific Scimed, Inc., 729 F.3d 357 (3d Cir. 2013), where the Third Circuit concluded that a district court had not abused its discretion in denying leave to amend because the plaintiff "offered no cogent explanation" for his

---

[10] Recall: the spreadsheet was obtained in June 2023. See Plaintiffs' Reply at 3, 13; Defendants' Opposition at 1-2, 8, 12, 15. And the Plaintiffs filed the second complaint in January 2025.

[11] Things might have been different if this were a civil rights lawsuit, because of the "solicitude" given to such cases in leave-to-replead law. See Mullin, 875 F.3d at 153. But this is a commercial dispute.

"failure" to "move[] to amend his complaint at any time before the District Court granted the dismissal."  729 F.3d at 368.[12]

The plaintiff's "explanation," id., for the delay in that case looked something like the account the Plaintiffs have provied here.  The Jang plaintiff noted that "'it was early in the case'" and that "'the pleadings had not previously been tested.'"  Id.  The court of appeals was unmoved.  Those types of reasons were not enough to render the district court's exercise of its discretion improper.  Id.

Move to In re Adams Golf, Inc. Securities Litigation, 381 F.3d 267 (3d Cir. 2004) --- in which the court of appeals upheld a district court's decision to disallow leave to amend where "the purported new allegations consist[ed] not of new information, but, rather, information available at all times relevant to th[e] action and facts not necessarily curative of the pleading problems at issue."  Id. at 280-81.

The Adams Golf "plaintiffs could have introduced the allegations in the motion to amend long before the Court granted the motion to dismiss."  Id. at 280.[13]  Those plaintiffs therefore bore responsibility for not timely adding new allegations, having "clearly risked the prospect of the entry of a final dismissal order."  Id.  In other words, the plaintiffs' "'misplaced confidence' in their original pleading," id. (citation omitted), did not warrant granting them a chance to replead.

Finally, consider Bjorgung v. Whitetail Resort, LP, 550 F.3d 263 (3d Cir. 2008).  In affirming a district court's denial of leave to amend, the court of appeals put it this way:

> [The plaintiff] had a straightforward, but very necessary, job to do. He had to correct his complaint and begin to sue the proper entities.  The defendants placed him immediately on notice of his error.  And yet he waited over three years and allowed the District Court to reach the brink of ruling dispositively on the entire suit before he undertook to fulfill his responsibility.  To allow amendment at that point might send the court through a substantial period of

---

[12]  Here, the spreadsheet was received in June 2023, while the motion to dismiss the first complaint was pending; as noted, no amended complaint was filed while the motion was pending.

[13]  See footnote 12.

11

> additional discovery and motions.  We find a considerable potential burden in this, one that would warrant denial of leave to amend . . . unless [the plaintiff] produced a persuasive explanation for his delay.
>
> [The plaintiff] offered no excuse or explanation to the District Court for his delay . . . .

Id. at 267.

So too here.

The "straightforward, but very necessary, job to do," id., was complying with the Court's order.  Teeing up "ALL facts and claims" in the second complaint.  See December 2024 Order.  Not the alternative: ignoring the discovery, seeing things how went, and then digging into the material only if (as happened) the Court did not rule as the Plaintiffs hoped.

And while in Bjourgung there was merely a "potential burden" on the court, Bjorgung, 550 F.3d at 267, here the burden actually materialized.  The Court produced an extensive second motion-to-dismiss opinion that, on the Plaintiffs' theory, was unnecessary --- because it would have come out the other way had the Plaintiffs included the spreadsheet-based allegations in the second complaint.

And again, as in Bjourgung, there is no meaningful "excuse or explanation" here.  Id.  The spreadsheet was available around 18 months before the second complaint was filed.  It should have been reviewed and incorporated into that complaint.  It was not.

The Third Circuit "has declined to reward a wait-and-see approach to pleading."  Jang, 729 F.3d at 368 (citation omitted).

But that is the route the Plaintiffs took here.  They did not review the relevant discovery, and in doing so they took the chance that the second motion to dismiss would be granted, as it was.  But this "wait-and-see," id., amounted to undue delay and unnecessarily consumed their adversary's time and the Court's.

Applying the Rule 15 standard,[14] the Court will opt not to permit the filing of an added complaint. The Plaintiffs' motion at ECF 61 is denied.

IT IS on this 27th day of January, 2026, **SO ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.

---

[14] The Rule 16 standard may possibly be the governing one here, see generally Premier Comp Sols., LLC v. UPMC, 970 F.3d 316 (3d Cir. 2020), because of the Plaintiffs' seeming disregard for the "ALL facts and claims" order. But that does not matter for now. The lower Rule 15 standard for allowing repleading is not met. So the higher Rule 16 standard is not met either.

13